RODGERS   v.   BURNETT.

(*Knoxville.*   November   23,   1901.)

1. RELIGIOUS SOCIETIES.  *Re-affirmance of doctrines affecting.*

   The court re-affirms the doctrines enunciated in *Nance* v. *Busby*, 91 Tenn., 303, declaring the status and rights of religious societies and their members in the Civil Courts. (*Post, pp. 178-181.*)

2. SAME.  *Effect of decision by synod as to status of church.*

   Where a synod, with which a church is connected, has at its regular session decided that one of two rival factions is the true church, to the exclusion of the other faction, and has ordered a reorganization of the church by that faction and awarded to it the control of the church property, an executive committee of the synod cannot, after the close of the session, in the absence of some authority to be found in the constitution, rules, or laws governing the denomination, reconsider and reverse the action of the synod and recognize the other faction so as to enable it to recover control of the church property. (*Post, pp. 175-181*).

3. SAME.  *Forfeits control of church property, when.*

   A deed for church property contained this clause, to wit:  "For and in consideration of the love of the gospel and other causes, convey unto the elders of Zion's Church and their successors in office forever, for the only use as a church and controlled by the Evangelical Lutheran Church of the Holston Synod." The Zion Church, through its recognized governing body, after questioning the orthodoxy of the Holston Synod, withdrew from that synod and united with Missouri Synod.
   *Held:* That Zion Church thereby forfeited control of the property conveyed by said deed.  The property was conveyed on condition that Zion Church should remain in the Holston Synod.  (*Post, pp. 181-184.*)

4. SAME.  *Rights of withdrawing or excluded members.*

   Members of a church who have voluntarily withdrawn or have been excluded, though constituting a majority of the member-

Rodgers *v.* Burnett.

ship, have no right or claim to the control of the church property that the courts will recognize or enforce. (*Post, p. 184.*)

5. COURT OF CHANCERY APPEALS. *Construction of deed by.*

Construction of a deed is a question of law and the decision of such question by the Court of Chancery Appeals is not binding upon this court. (*Post, p. 184.*)

FROM KNOX.

Appeal from the Chancery Court of Knox County. JOS. W. SNEED, J.

SAMSON, WELCKER & PARKER for Rodgers.

GREEN & SHIELDS and S. R. MAPLES for Burnett.

McALISTER, J. The controversy presented upon this record is between two rival factions of Zion's Church, of the Evangelical Lutheran denomination, in respect of the right to use, control, and manage the church building as a place of worship, and to occupy the parsonage appurtenant to the church.

The Court of Chancery Appeals, reversing the decree of the Chancellor, held that complainants are entitled to the use, control, possession and management of the church property, and perpetually enjoined the defendants from in any way

attempting to interfere with such control, use, possession, and management.

It appears from the findings of the Court of Chancery Appeals, that on September 1, 1868, Frederick Spangler, of, Knox County, "for and in consideration of the love of the gospel and other causes, conveyed unto the elders of Zion's Church and their successors in office forever, for the only use as a church, and controlled by the Evangelical Lutheran Church of the Holston Synod," the tract or parcel of land on which the church building and parsonage are now situated.

The Court of Chancery Appeals finds that, "The Evangelical Lutheran Church is a Christian denomination, and that it appears to have four or five general branches, such as United Synod, General Synod, and others, and each renders its own decisions on doctrinal questions. Each church, however, is a separate unit, independent, and can establish its own constitution and laws. It can form synodical relations or not, as it chooses, and as a church, pure and simple, can sever such synodical relations previously established at its pleasure. Zion's Church established its own constitution and laws, and promulgated its own creed. The separate Church connects itself with the synod of its church by petition, the authorities of the synod applied to examine its constitution and creed, and if they think they conform to the true doctrine of the Evangelical Lutheran Church, as

held and interpreted by that synod, the applying Church is admitted to synodical relations, and is, thereafter, entitled to send delegates to the meetings of that synod. If a church wishes to withdraw from a synod with which it is connected, it does so by a vote of its members, and it can, if it sees proper, as a matter of courtesy, notify the synod of the fact of its withdrawal. It can, it appears, ignore the courtesy. Each church calls its own pastor by a vote of its members, and keeps him as long as it wants him, and can depose him by a vote of its members, at any time, in the absence of a contract for a definite term. . . . In brief each church is a separate and independent congregation, and interprets for itself the Evangelical Lutheran creed. . . . In 186—, Zion's Church connected itself with Holston Synod, and Holston Synod belongs to the United Synod, of the Lutheran Church in the South. Early in 1897, Zion and Bethel churches united in a call to complainant, Rodgers. Mr. Rodgers accepted the call of the two churches aforesaid, which, by voluntary action, had for several years united in a pastorate—that is to say, united in calling a preacher to minister to both congregations. Early in 1898, opposition was manifested to the ministry of Mr. Rodgers, and shortly afterwards it became active and aggressive, culminating in two of the elders requesting his resignation. A meeting of these two elders with the elders of

Bethel Church was held, and they all requested Mr. Rodgers to resign. Two of the elders of Zion's Church carried around a petition among most of the members of that church, and obtained their signatures to a request to Mr. Rodgers to resign. He refused to resign. The result was the anti-Rodgers faction retired, and thereafter commenced holding service and Sunday School in a schoolhouse near-by. Both factions then elected delegates to the Holston Synod. The question as to which faction should be regarded as Zion's Church was brought up. That synod determined that the Rodgers faction represented the true Zion's Church, and thereupon the President of the Synod sent a letter to one of the elders elected by the other faction, or recognized by it as an elder, directing him to turn over the property to the Rodgers faction. Nothing, however, was done by the elder in response to this letter. The Holston Synod, at this meeting, directed Zion's Church, as recognized by it, to revise its roll of members, and thereafter, at a meeting called, the Rodgers faction attempted to carry out this order, but the faction represented by the defendants refused to sign it, and they continued to worship in the schoolhouse. This state of affairs continued until 1899, when the representatives sent to the synod by the Rodgers faction, were again recognized. After this, it appears that the Zion's Church, as represented by the com-

24 P—12

plainants, conceived a doubt as to the true orthodoxy of the teachings of the Holston Synod. It appears, furthermore, that after the meeting of the synod in 1899, its representatives, composed of its executive committee, determined to reopen the question as to which was the true Zion's Church, and thereupon, after what they called an investigation, they set aside the action of the synod in recognizing the complainants as the true representatives of the true Zion's Church, and announced that the faction represented by the defendants was the true Zion's Church. About this time, whether just before or just after is not definitely certain from the record, Zion's Church, as represented by complainants, had a meeting, and resolved to withdraw from the Holston Synod and connect themselves with the Missouri Synod. After the action aforesaid of the Executive Committee of the Holston Synod, the defendants became more active in their claims to the church and parsonage, and on June 3, 1900, they broke in and had service, and also service at night, and were asserting the right to occupy the house as a place of worship, and to exclude the complainants."

The Court of Chancery Appeals was of opinion upon this branch of the case, that *Nance* v. *Basby,* 91 Tenn., 305, was controlling. In that case it was held that the civil courts have no jurisdiction of any purely ecclesiastical question except

as an incident to the determination of civil rights. After a member has voluntarily withdrawn or been expelled from such association, he ceases to have any right or interest in its property, and he cannot thereafter maintain suit for himself or for himself and existing members of the association in sympathy with him against other members of the association complaining of diversion of the property. Persons withdrawn or expelled from membership are not of the same class with actual members, although they may be in sympathy with each other. Again, it was held in that case that the excommunication of members by an unincorporated religious association, done in the exercise of its powers of discipline, is valid and effectual when questioned in the civil courts to exclude the excommunicated ones from membership in the association, and consequently from any right to its property. And it is not material that the proceedings were irregular and the expulsion made without giving notice or opportunity of hearing, to the excluded members, the proceedings are nevertheless conclusive upon the Courts. . . . They will, however, determine whether persons claiming property given in trust for a religious society of a certain faith and order are of the required faith and order. They will not inquire as to the sincerity with which a religious creed is professed.

The Court of Chancery Appeals then, applying

these principles of law to the facts, said: "Now we take it, under the rulings in that case, that after the meeting of 1898, at which the defendants and those represented by them, withdrew and commenced holding services in the schoolhouse, and after the recognition by the synod in 1898, and again in 1899, of the complainants, or Rodgers faction, as the true church, settled the question of the ecclesiastical membership of Zion's Church, as being those who adhered to complainant's faction, that is, those who allowed their names to go upon the revised list of members ordered to be made by the synod. Now, we have been unable to find any authority in the constitution or rules or laws governing this denomination that authorized the executive committee of the synod a year and a half after complainants had been recognized as the true representatives and the true members of the church, to open up the question settled by the synod in 1897, and reverse its action and declare that the defendants were the true members and the true representatives of the church. We hold that the question of the settlement of who were the actual and true members of Zion's Church was settled at the meeting in 1898, from which the defendants withdrew, and the action of the synod thereafter recognizing the complainants and their followers as the true members and representatives of the church."

Rodgers *v.* Burnett.

The findings of fact of the Court of Chancery Appeals on this branch of the case are, of course, conclusive upon us and, upon the facts found, the Court has made a correct application of the law.

But it yet remains to be seen whether complainants are in any attitude to maintain this bill. They have voluntarily severed their connection with the Holston Synod, and joined the Missouri Synod. The important inquiry is whether they can take the church building and parsonage with them, figuratively speaking?

The solution of the question depends upon the proper interpretation of the deed heretofore mentioned. The clause raising the question is as follows: "For and in consideration of the love of the gospel and other causes, convey unto the elders of Zion's Church, and their successors in office forever, for the only use as a church, and controlled by the Evangelical Lutheran Church of the Holston Synod," the tract of land, etc., etc. The Court of Chancery Appeals held that this clause was not a condition, but merely descriptive, and that complainants might withdraw from the Holston Synod and attach themselves to the Missouri Synod without forfeiting their rights under the deed. We do not concur with the Court of Chancery Appeals in this construction of the deed. It is quite clear, in our opinion, that the grantor intended that this property should be held

by Zion's Church so long as it is controlled by the Evangelical Lutheran Church of the Holston Synod. The grantor had a right to annex this condition to his grant, and when the relations of the church were severed with the Holston Synod, and it became attached to the Missouri Synod, the right to claim and manage this property was thereby forfeited.

In *McBride* v. *Porter,* 17 Iowa, 203, it was held that where property is procured not only for a particular congregation, but it is also stated that it is subject to certain particular and general synods, the majority of the congregation withdrawing from or refusing to recognize the authority of the synod, cannot retain control of the property. So it has been held that if a particular congregation is, by the terms of its charter, in full connection with a synodical body, and not independent of it, and a portion of the congregation should secede from the synod, it will forfeit its right to the church property. *Harmon* v. *Dreher,* 1 Spears Eq., 87.

The majority of the members of a Baptist Church, although it is independent in government, have no power to divert the church property to the propagation of doctrines contrary to the Baptist Articles of Faith, and in attempting to do so, they may be enjoined from interfering with the proper use and control of the property by the

minority. *Mt. Zion's Baptist Church* v. *Whitman,* 13 L. R. A., 198.

It is not in the power of a majority of a religious society, by reason of a change of religious views, to carry a property which has been dedicated to a church to the support of a new and different doctrine. And the title to church property of a divided congregation is in that part of it, whether a minority' or majority which is acting in harmony with its own law; and the ecclesiastical laws, usages, customs and principles which were accepted among them before the dispute began, are the standard for determining which party is right." *Smith* v. *Pedigo,* 19 L. R. A., 433; 32 L. R. A., 95, note.

"If the trust is confided to a religious congregation of an independent or congregational form of church government, it is not in the power of the majority of that congregation, however preponderant, by reason of change of religious views, to carry the property thus confided to them to the support of a new and conflicting doctrine." *Watson* v. *Jones,* 13 Wall, 723.

The Court of Chancery Appeals finds as a fact that complainants had conceived a doubt as to the orthodoxy of the Holston Synod, and with a view of testing it, had propounded a series of doctrinal questions to that body, and that the answers were not entirely satisfactory to complainants. It was after this that the complainants

withdrew from the Holston Synod and attached themselves, or the church as represented by them, to the Missouri Synod. The construction of the deed is not a conclusion of fact, but a question of law, and we hold that the condition of this deed was violated by the action of complainants in attaching the church to the Missouri Synod, and that complainants are not entitled to maintain this bill, and the same is dismissed at their costs.

The remaining question is whether defendants are entitled to the control and management of this property under the allegations of their crossbill. The Court of Chancery Appeals finds as a fact that defendants had voluntarily withdrawn from the church and had refused to enroll their names on the revised list of the members as ordered by the Holston Synod. That Court further finds that the Holston Synod had adjudged that defendants did not constitute the true Zion's Church.

It must follow, from these findings of fact, that defendants are in no attitude to claim the custody and control of the church property. It is therefore decreed that the crossbill be dismissed at the costs of defendants.