# IN THE COURT OF APPEALS OF TENNESSEE
# AT KNOXVILLE
September 16, 2005 Session


## WILLIAM M. HENSLEY, ET AL. v. ROBERT CARRIER


### Appeal from the Chancery Court for Washington County
### No. 34979    G. Richard Johnson, Chancellor


_____

### No. E2005-00335-COA-R3-CV - FILED JANUARY 9, 2006

_____


William M. Hensley and Mary Hensley ("Plaintiffs") sued Robert Carrier ("Defendant") regarding the use of a driveway. The case was tried without a jury and the Trial Court found and held that it was the intent of the original grantors that the driveway be a joint driveway; that if this holding was incorrect, that the Plaintiffs had established a right to the driveway through adverse possession; that if the prior two holdings were incorrect, that Plaintiffs had proven a prescriptive easement or an implied easement to use the driveway. Defendant appeals claiming that the Trial Court erred in finding a prescriptive easement or an implied easement, and also that the Trial Court erred in not dismissing Plaintiffs' claims based upon the statute of limitations. We affirm.


### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed;
### Case Remanded


D. MICHAEL SWINEY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and SHARON G. LEE, J.J., joined.

Rowland E. Verran and Shane Usary, Johnson City, Tennessee, for the Appellant, Robert Carrier.

James D. Culp, Johnson City, Tennessee, for the Appellees, William M. Hensley and wife, Mary Hensley.

# OPINION

## Background

Plaintiffs, husband and wife, own land located at 207 West Watauga Avenue in Johnson City ("Lot 207") and have used this property as rental property since they purchased it. Defendant resides at the property located at 205 West Watauga Avenue in Johnson City ("Lot 205")[1]. The driveway at issue rests on Lots 205 and 207. The majority of the driveway sits on Lot 205, with the exception of a small part that is on Lot 207. The driveway leads to one building, part of which is a garage sitting mostly on Lot 207 with the remainder of the building being on Lot 205. The garage located on Lot 207 was built prior to construction of the driveway.

Defendant rented the house on Lot 207 from the Plaintiffs for approximately a year and a half or two years beginning in 1995. Since 1997 or 1998, Defendant has lived in the house on Lot 205. Defendant also rented just the garage on Lot 207 from Plaintiffs beginning in 1997, and he continued renting the garage through June of 2002, well after he began living on Lot 205.

When Defendant first moved into the house on Lot 205, he was renting from the then owner. In August of 2002, Defendant's sister, Mary Evelyn Brown, purchased Lot 205. Defendant currently resides on Lot 205 and holds a Limited Power of Attorney from his sister allowing him to represent his sister's interests in this lawsuit.

After his sister purchased Lot 205, Defendant wrote a letter to Mrs. Hensley dated September 24, 2002. This letter stated, in pertinent part:

> I would like to talk with you. About the garage we share. As you no by now there is no right away to it. and I owen 3.5 feet of it. I would like to talk with you. About the money I have paid you over the past years. As you now no I should not have been paying it. I was thinking maybe we could work something out on your part of the garage. Maybe you could give me that little pice of land and we would call it even.

Plaintiffs sued Defendant in January of 2003, claiming, in part, that they were trying to sell Lot 207 and that Defendant was interfering with their lawful right to use the joint driveway. The case was tried without a jury in November of 2004.

---

[1]Robert Carrier does not own Lot 205, although he stated in his answer to Plaintiffs' complaint that he did. Instead, his sister, Mary Evelyn Brown, is the record owner of Lot 205. By Agreed Order of Substitution, Mary Evelyn Brown was substituted as the proper party Defendant. Mary Evelyn Brown then granted Robert Carrier a Limited Power of Attorney to represent her interests in regard to Lot 205. As Mr. Carrier represented his sister's interest at trial, and was the party residing on Lot 205 at that time, we refer to Mr. Carrier as "Defendant." Mr. Carrier did not attempt to act as Ms. Brown's attorney, however.

Copies of deeds introduced at trial show that A.L. Anderson and his wife, Chlories Leigh Anderson at one time owned Lot 207 and that by deed dated May 9, 1941, Mr. and Mrs. Anderson deeded a strip on the northeasterly side of Lot 207 approximately three and a half feet wide to Charles Parsons, who at the time owned Lot 205. Mr. and Mrs. Anderson sold the remainder of Lot 207 to Charles B. Kelton and his wife, Maude C. Kelton, by deed dated April 2, 1943. Plaintiffs purchased Lot 207 from the Estate of Maude C. Kelton by deed dated May 11, 1984.

By deed dated January 15, 1990, Steven P. Harris and his wife, Beverly W. Harris, purchased Lot 205 from the then owners, Richard T. Pearce and wife, June Pearce. The Pearces had obtained Lot 205 from Mrs. Parsons in 1989. The January 15, 1990 deed from Mr. and Mrs. Pearce to Mr. and Mrs. Harris states, in pertinent part: "This property is specifically subject to a joint garage built upon Lots 5 and 6, Block 1, of the Watauga Land Company's Addition to Johnson City …." Defendant's sister, Mary Evelyn Brown purchased Lot 205 from Mr. and Mrs. Harris by deed dated August 23, 2002.

At trial, Mr. Hensley testified that there are two sets of steps between the driveway and Lot 207. Photographs of these steps were introduced at trial. The photographs show that one set of steps has a metal handrail and that the steps link Lot 207 to the driveway. The steps lead no where else.

Mr. Hensley further testified that the property line between Lots 205 and 207 runs a few inches inside their garage, but that the rest of their garage is on Lot 207. Mr. Hensley testified that the driveway was built after the garage "was built because it - - our garage was inside the original boundary line of 55 feet." He admitted that the greater part of the driveway is on Lot 205. Mr. Hensley testified that "Mrs. Parsons owned [Lot 205 until she sold it to the Pearces in 1989] . . . and Mrs. Parsons told us that we had a joint driveway."

Mr. Hensley testified that over the years, he has seen some of his renters using the driveway. He stated:

> We had some of our people rent it. They use their cars, had to repair their cars out there on the driveway, and they also … moved some of their belongings into that garage which we rented.…And also these people that rented our house, a lot of them stored their, some extra stuff in our garage there. And we had the garage repaired in 1993 to put new doors on it to make sure that nobody could get in there and get the stored equipment.

Mr. Hensley testified that no demand ever was made that they stop using the garage or the driveway. In fact, Mr. Hensley testified that Defendant was one of Plaintiffs' renters and that "after [Defendant] moved away, he rented the garage from us because he needed to continue using it to store some of his equipment or some of his furniture or something in that garage."

Mrs. Hensley also testified at trial. She testified that the majority of their garage is on their side of the property line and that over the years, she and her husband have paid for the required maintenance on their garage. Mrs. Hensley handled most of the details regarding renting Lot 207, and she testified:"It was my custom to tell the renters that the garage was a part of the property." Mrs. Hensley testified that she does not recall specifically having this conversation with Defendant, but it was her custom to tell all renters.

Eighty-six year old Ethel Correll, Maude Kelton's sister-in-law, also testified. Ms. Correl testified that Maude Kelton once owned Lot 207 and had owned it for "[f]orty-some years." Ms. Correl testified that Ms. Kelton had an automobile that she kept in the garage on Lot 207 and that Ms. Kelton used the driveway to access the garage. In fact, Ms. Correl testified: "I had used the garage - - well, everybody that went up there used the drive because there wasn't any other way to get in, …."

After trial, the Trial Court entered its Final Judgment on January 12, 2005. The Final Judgment incorporates by reference the Trial Court's memorandum opinion. In the memorandum opinion, the Trial Court specifically found and held:

> There is absolutely, positively, unequivocally no question that this garage belongs to the Plaintiff Hensleys. Again, there is absolutely, positively, unequivocally no question that the Hensleys and their Predecessors in Title have used this garage, indeed at a point in time for about a year or two, maybe a year and a half, the Plaintiffs rented this garage to [Defendant]. Prior to the time of the Plaintiff's renting the garage itself to [Defendant], they rented the premises, including the house and the garage to [Defendant]. So [Defendant] knew from first-hand knowledge that the [Plaintiffs] were not only claiming the house as rental property but were claiming the garage which sits on the right side of the driveway next to their house as rental as [Defendant] has rented both of these structures from the Plaintiffs.
>
> * * *
>
> So the Court finds first that these properties, these structures have been there on this property since the 1940's, that the garage unquestionably goes with the Plaintiff's property and that the proof is conclusive and unequivocal that the Plaintiffs and their Predecessors in Title have used this driveway since the 1940's, since the house was built and the garage was placed there for 60 some years, over 60 years. When [Defendant's] sister Mrs. Brown, bought the property at 205, that's when [Defendant] found what he deemed to be a discrepancy in the deeds to these two properties because the driveway is never mentioned and because the garage was not mentioned until the 1980 something deed from Harris's to Purchasers where the garage was referred to quote "joint garage", close quotes.

-4-

Well obviously it's not a joint garage. This garage does not belong to 205 West Watauga. Unequivocally it belongs to 207 so what are they talking about when they say joint garage? What did those grantors and grantees intend in that [1980 something deed] when they referred to quote "joint garage" closed quotes? Well obviously it's one of two things and it can only be one of two things if one uses any reason or any logic. First, the garage is not joint but rather it appears in these photographs that there could be a joint wall between the Plaintiff's garage and a structure on the Defendant's property that, I can't ascertain whether it's a garage or what it is, it's a structure, but it appears they have a common wall. This Court also finds that the property of the Plaintiffs is not accessible by vehicle except by this driveway. You can look at these pictures and indeed the deed itself only calls 51 and1/2 feet frontage on Watauga for the Plaintiff's property, a very narrow lot, very difficult in 1940 for them to lay these things out and there's just no way for a fire truck, a moving truck, a car, a person who lives at 207 could get on that property except by this driveway that runs between the properties. This Court finds that the unequivocal intention of the parties from the inception of the building of these structures on the property was to have a joint driveway indeed. Three and a half feet of the driveway was conveyed, or three and one half feet of the property was conveyed at one time and that was, I think we said in 1941 and it appears that the purpose of that deed was to construct the driveway.…

\* \* \*

This Court further finds that there has never been an objection over 60 years to this driveway or it's use or to whom it belonged until the Defendant … in his words, got a hold of the deeds and concluded as a lay person that this driveway belonged to his sister, Mrs. Brown and therefore the garage belonged to his sister, ….

In its Final Judgment, the Trial Court found and held, *inter alia*:

**IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED** that the Court finds that the unequivocal intention of the parties from the inception of the building of these structures on the property was to have a joint driveway indeed.

**IT IS, FURTHER, ORDERED, ADJUDGED, AND DECREED** that … there has never been any objection over 60 years to this driveway or its use or to whom it belonged until [Defendant] … in his words got a hold of a deed and concluded as a lay person that this driveway belong[ed] to his sister.

**IT IS, FURTHER, ORDERED, ADJUDGED, AND DECREED** that it was the intention of the grantors/grantees originally that the driveway be a joint driveway.

**IT IS, FURTHER, ORDERED, ADJUDGED, AND DECREED** that the Plaintiffs in Title have claimed this driveway, have made uninterrupted open and visible use of this property for more than 60 years.…If there is any question about the title, the Plaintiffs have met the criteria for adverse possession.

The Final Judgment also stated that if the Trial Court's first two holdings were incorrect, then the Trial Court found and held that Plaintiffs had proven either an easement by implication or a prescriptive easement to the driveway. Defendant appeals to this Court.

### Discussion

Defendant raises four issues on appeal, which we quote:

(1) Whether appellees established by a preponderance of the evidence a prescriptive easement in a driveway by adverse possession for twenty years or more.
(2) Whether appellees could "tack" their possession to that of their predecessors in interest to establish the prescriptive period of twenty years or more.
(3) Whether the Chancellor erred in holding that appellees had established an easement by implication.
(4) Whether appellees' claim was barred by the Statute of Limitations.

Defendant has failed to address the fact that the Trial Court first construed the deed and found and held that it was the intention of the original grantors that the driveway be a joint driveway, and that if this holding were incorrect, that Plaintiffs had proven their rights to the driveway by adverse possession. The Trial Court stated that only if its first two holdings were incorrect did it find and hold that Plaintiffs had proven by clear and unequivocal evidence that they had an easement by implication or an easement by prescription. Thus, if we decide that the Trial Court was correct either in construing the deed or in holding that the Plaintiffs had established their claim through adverse possession, we pretermit the necessity of addressing whether Plaintiffs established an easement by prescription or an easement by implication.

We, therefore, first address whether the Trial Court correctly construed the deed and found that "it was the intention of the grantors/grantees originally that the driveway be a joint driveway." Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial

court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

As our Supreme Court recently explained in *Griffis v. Davidson County Metro. Gov't*:

> In construing a deed, our primary task is to ascertain the grantor's intent from the words of the deed as a whole and from the surrounding circumstances. *Collins v. Smithson*, 585 S.W.2d 598, 603 (Tenn. 1979); *Bennett v. Langham*, 214 Tenn. 674, 383 S.W.2d 16, 18 (1964). Interpretation of a deed is a question of law. *Rodgers v. Burnett*, 108 Tenn. 173, 65 S.W. 408, 411 (1901); *Mitchell v. Chance*, 149 S.W.3d 40, 45 (Tenn. Ct. App. 2004).

*Griffis v. Davidson County Metro. Gov't*, 164 S.W.3d 267, 274 (Tenn. 2005).

Two of the deeds introduced at trial are pertinent to resolving the issue at hand. First, we look at the deed from A.L. Anderson and Chlories Leigh Anderson dated May 9, 1941, deeding a strip on the northeasterly side of Lot 207 approximately three and a half feet wide to Charles Parsons, who at the time owned Lot 205. The surrounding circumstances show that the garage on Lot 207 existed prior to the making of this deed. Further, the evidence shows that other than the driveway, there is no reasonable vehicular access to the garage on Lot 207. The Trial Court also found that the purpose of the 1941 deed "was to construct the driveway" leading to the already existing garage located on Lot 207. It defies logic to assume that Mr. and Mrs. Anderson would deed that strip of land to Mr. Parsons without intending to retain an easement to utilize the driveway. Otherwise, Mr. and Mrs. Anderson would have effectively cut-off their access to their already existing garage.

The second deed pertinent to the issue at hand is the one from Richard T. Pearce and wife, June Pearce to Steven P. Harris and wife, Beverly W. Harris dated January 15, 1990, which states, in pertinent part: "This property is specifically subject to a joint garage built upon Lots 5 and 6, Block 1, of the Watauga Land Company's Addition to Johnson City …."

In regard to this deed, the Trial Court found and held:

> the garage was not mentioned until the 1980 something deed from Harris's to Purchasers where the garage was referred to quote "joint garage", close quotes. Well obviously it's not a joint garage. This garage does not belong to 205 West Watauga. Unequivocally it belongs to 207 so what are they talking about when they say joint garage? What did those grantors and grantees intend in that [1980 something deed] when they referred to quote "joint garage" closed quotes? Well obviously it's one of two things and it can only be one of two things if one uses any reason or any logic. First, the garage is not joint but rather it appears in these

-7-

photographs that there could be a joint wall between the Plaintiff's garage and a structure on the Defendant's property that, I can't ascertain whether it's a garage or what it is, it's a structure, but it appears they have a common wall. This Court also finds that the property of the Plaintiffs is not accessible by vehicle except by this driveway. You can look at these pictures and indeed the deed itself only calls 51 and 1/2 feet frontage on Watauga for the Plaintiff's property, a very narrow lot, very difficult in 1940 for them to lay these things out and there's just no way for a fire truck, a moving truck, a car, a person who lives at 207 could get on that property except by this driveway that runs between the properties. This Court finds that the unequivocal intention of the parties from the inception of the building of these structures on the property was to have a joint driveway indeed. Three and a half feet of the driveway was conveyed, or three and one half feet of the property was conveyed at one time and that was, I think that we said in 1941 and it appears that the purpose of that deed was to construct the driveway.…

We find that the evidence does not preponderate against any of the findings of fact made by the Trial Court. The evidence shows that the driveway was treated as a joint driveway for approximately 60 years and used both by prior owners of Lot 207 and by some of the renters of Lot 207. The evidence shows, as found by the Trial Court, that a strip approximately three and a half feet wide of Lot 207 was conveyed to the then owners of Lot 205 in 1941, apparently to facilitate construction of the joint driveway. Photographs of the driveway introduced at trial show that the driveway gives access to both the garage on Lot 207 and to the rest of the structure sitting on Lot 205. The photographs also show sets of steps that were constructed to lead directly from the driveway to Lot 207. These steps lead no where else. The evidence shows that other than the driveway, there is no other reasonable vehicular access to the garage on Lot 207. In addition, Mr. Hensley testified that "Mrs. Parsons owned [Lot 205 until she sold it to the Pearces in 1989] . . . and Mrs. Parsons told us that we had a joint driveway."

The record is devoid of evidence showing that anyone other than the owners or persons renting from the owners of Lot 207 ever attempted to use the garage that sits mostly on Lot 207. The Trial Court found and held that the garage located mostly on Lot 207 had been used exclusively by the owners of Lot 207, or their renters, and belonged solely to the owners of Lot 207. The evidence does not preponderate against the Trial Court's findings, and we find no error in the Trial Court's conclusion as to the garage located on Lot 207.

The January 15, 1990 deed from Mr. and Mrs. Pearce to Mr. and Mrs. Harris states: "This property is specifically subject to a joint garage built upon Lots 5 and 6, Block 1, of the Watauga Land Company's Addition to Johnson City …." We find and hold, as did the Trial Court, that this deed found in Defendant's chain of title shows clearly that Lot 205 is subject to the rights of the owners of Lot 207 to utilize the garage sitting mostly on Lot 207 and to access this garage by means of the driveway. This is consistent with the Trial Court's finding that the

grantors/grantees, including those of the 1941 deed, intended that "the driveway be a joint driveway."

We hold that the Trial Court did not err in construing the relevant deeds, including the 1941 deed, when it held "that it was the intention of the grantors/grantees originally that the driveway be a joint driveway." Our determination that the Trial Court correctly interpreted the relevant deeds pretermits the necessity of addressing the first three issues Defendant raised on appeal.

We will, however, briefly address Defendant's issue regarding whether appellees' claim was barred by the statute of limitations. Defendant claims that Plaintiffs' suit was barred by Tenn. Code Ann. § 28-2-103, and that the Trial Court did not rule upon this statute of limitations defense.

In pertinent part, Tenn. Code Ann. § 28-2-103 provides:

**28-2-103. Seven-year period runs from time right accrued – Extent of possession. –** (a) No person or anyone claiming under such person shall have any action, either at law or in equity, for the recovery of any lands, tenements or hereditaments, but within seven (7) years after the right of action accrued.

Tenn. Code Ann. § 28-2-103(a) (2000).

The Trial Court implicitly ruled on the statute of limitations defense as the Trial Court heard proof and made the findings and holdings in Plaintiffs' favor as discussed above. Plaintiffs had no notice that Defendant or anyone else was interfering or intended to interfere with their right to use the driveway until after Defendant's sister purchased Lot 205 in August of 2002. Plaintiffs filed suit in January of 2003, well within the statute of limitations. Clearly, the Trial Court found that Tenn. Code Ann. § 28-2-103 did not bar Plaintiffs' claims. We agree and find this issue to be without merit.

### Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellant, Robert Carrier, and his surety.

_____
D. MICHAEL SWINEY, JUDGE