IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 1, 2019

## WAYNE HOLLOWAY, ET AL. V. TANASI SHORES OWNERS ASSOCIATION, ET AL.

**Appeal from the Chancery Court for Sumner County**
No. 2014-CV-107     Joe H. Thompson, Judge Sitting By Interchange

_____

### No. M2018-00932-COA-R3-CV

_____

Wayne Holloway and Jerry Brewington ("Plaintiffs") appeal the April 20, 2018 order of the Chancery Court for Sumner County ("the Trial Court") finding and holding, *inter alia*, that Plaintiffs, not Tanasi Shores Owners Association and Timmons Property, Inc. ("Defendants"), are responsible for maintenance and repair of decks connected to their respective condominium units. We find and hold that Tenn. Code Ann. § 66-27-303 applies and that, pursuant to the declaration, decks and porches are part of the condominium unit, not common areas, making Plaintiffs responsible for maintenance and repair of the decks connected to their respective condominium units. We affirm the Trial Court's April 20, 2018 order.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J.,M.S. and KENNY W. ARMSTRONG, J, joined.

Bruce N. Oldham, Gallatin, Tennessee, for the appellants, Wayne Holloway and Jerry Brewington.

Karl M. Braun and Nathaniel T. Gorman, Nashville, Tennessee, for the appellees, Tanasi Shores Owners Association and Timmons Property, Inc.

## OPINION

### Background

Tanasi Shores condominium community was created in April of 1984 via a Master Deed of Tanasi Shores Phase I ("Master Deed") in accordance with Tenn. Code Ann. § 66-27-101, *et seq.* In pertinent part, the Master Deed provides: "Additionally, each Family Unit has a two car garage, a deck and porch, and Building #2 will feature a small courtyard." In August of 1984, a second phase of Tanasi Shores was created via Master Deed of Tanasi Shores, Phase II, which also contains the language "each Family Unit has a two car garage, a deck and porch." The Phase II Master Deed was incorporated into the Master Deed of Tanasi Shores Phase I in September of 1990, by language stating, in pertinent part: "The independent existence of the Phase II Master Deed shall hereby terminate in accordance with Grantor's original intent, so that the only remaining effective Master Deed with respect to the entire Tanasi Shores development shall be the Phase I Master Deed, as previously amended and as expanded by this instrument."

In 2006, the bylaws for Tanasi Shores were amended via a document titled Tanasi Shores Owners Association Amendment to By-Laws and Restatement of Entire Bylaws as Amended ("2006 Bylaws"), which provides, as pertinent: "Additionally, while driveways, porches, decks, and appurtenances to a Unit shall remain 'common areas', each Owner of a unit shall have an exclusive easement to use the driveways, porches, decks and other similar appurtenances to his/her Unit for as long as his/her ownership is retained." The 2006 Bylaws defined decks as "wooden structures with floors attached to Single Family Units used for outdoor activities whether they are screened or covered." Porches were defined as "the exposed aggregate or wooden area immediately surrounding the Front Entrance to a Single Family Unit."

For many years both before and after the enactment of the 2006 Bylaws, Defendants repaired and maintained the decks and porches of the Tanasi Shores condominium units ("Units" or "Unit"). In 2012, however, Defendants reevaluated the pertinent documents and determined that decks and porches were part of the Unit and that the maintenance and repair of decks and porches was the responsibility of the Unit owner. Upon a petition from the Unit owners, Defendants called a special meeting to discuss the issue of deck and porch maintenance. Ultimately, Defendants maintained the position that such maintenance and repairs were the responsibility of the Unit owner.

In April of 2013, letters were sent to some Unit owners including Plaintiffs informing them of work needed on their decks and advising them of their obligation to

2

have the repair work performed. In July of 2014, Plaintiffs[1] sued Defendants alleging that the policy change requiring owners to maintain and repair the decks connected to their respective condominium units violated the Master Deed and 2006 Bylaws. Plaintiffs sought, among other things, compensatory damages for costs incurred in repairing their respective decks.

After a trial without a jury, the Trial Court entered its order on April 20, 2018 finding and holding, *inter alia*:

> The court notes that there is an apparent conflict between the 2006 Bylaws, which provide that decks and porches are common areas to which unit owners have an exclusive easement, and the Master Deed, which provides that decks and porches are part of the Family Unit. The court finds that this conflict is governed by Section 303 of the Tennessee Condominium Act of 2008, which provides, in pertinent part, as follows:
>
>> (a) All provisions of the declaration[2] and bylaws are severable.
>> . . .
>> (c) In the event of a conflict between the declaration and the bylaws, the declaration prevails except to the extent the declaration is inconsistent with part 2, this part and parts 4 and 5 of this chapter.
>> . . .
>
> T.C.A. § 66-27-303. Although Tanasi Shores was created in 1984 in accordance with the Horizontal Property Act, certain sections of the Tennessee Condominium Act of 2008[3], including section 66-27-303, apply to condominiums created before January 1, 2009. T.C.A. § 66-27-202. If section 66-27-303 is applicable to Tanasi Shores, the Master Deed prevails over the 2006 By-Laws pursuant to the clear language of the statute. However, the statute also provides that while portions of the Condominium Act of 2008 apply to condominiums created before January 1, 2009, "those sections apply only with respect to events and circumstances occurring after January 1, 2009." *Id*. This language raises the question of whether the

---

[1] Wayne Holloway filed the suit initially. Jerry Brewington was added as a party plaintiff later.
[2] A "declaration" means any instruments, however denominated, that create a condominium, and any amendments to those instruments. T.C.A. § 66-27-203(11). In this case, the Master Deed created Tanasi Shores and constitutes a declaration within the meaning of the 2008 Tennessee Condominium Act. *See* T.C.A. §§ 66-27-102(10), 103.
[3] T.C.A. §§ 66-27-201 *et seq.*

3

2006 Amendment to the By-Laws that created the conflict with the Master Deed, or the repairs required in 2013 to the Plaintiffs' decks, constitute the "events and circumstances" referenced in the statute.

The term "events and circumstances" is not defined in the statute or by case law. In interpreting statutory provisions, the court must "ascertain and give effect to legislative intent without unduly restricting or expanding the intended scope of the statute." *Parks v. Mun. League Risk Mgmt. Pool*, 974 S.W.2d 677, 679 (Tenn. 1998) (citation omitted). The court notes that if the Legislature had intended for amendments to the property's governing documents to constitute the triggering event for inclusion in the statute, it certainly could have said so. The fact that it did not cannot be ignored. Therefore, the court finds that the required repairs to the Plaintiffs' decks in 2013 constitute "events and circumstances" within the meaning of the statute, making section T.C.A. §§ 66-27-202 and 303 applicable to this case. Accordingly, the Master Deed prevails.

Having found that the Master Deed prevails over the conflicting language in the 2006 By-Laws, the court must now ascertain whether unit owners are responsible for the maintenance and repair of their decks under the Master Deed. The interpretation of a deed is a question of law. *Hughes v. New Life Dev. Corp.*, 397 S.W.3d 453, 466 (Tenn. 2012) (citations omitted). The Tennessee Supreme Court has directed that in interpreting a deed, courts must primarily be concerned with ascertaining the intention of the grantor. *Id*. (citations omitted). The grantor's intent is ascertained from the words of the deed as a whole and from the surrounding circumstances. *Id*. (citations omitted).

As noted above, the Master Deed provides that "each Family Unit has a two car garage, a deck and porch," and the "Common Area" in Tanasi Shores includes the parcel of land depicted on the Plat, "except those areas designated as Family Units." (Trial Exhibit 1, Master Deed, ¶ Fifth (1) and (2)). This language clearly and unequivocally includes decks and porches as part of the Family Unit and excludes them as part of the Common Area. Because owners are obligated to perform maintenance and repair work within their own unit (Trial Ex. 1, 2006 By-Laws, Art. VI, § 3(a)), the court finds that the Plaintiffs are responsible for the maintenance and repair of their decks.

(footnotes in original but renumbered). Plaintiffs appeal the Trial Court's April 20, 2018 order to this Court.

## Discussion

Although not stated exactly as such, Plaintiffs raise one issue on appeal: whether the Trial Court erred in finding that the Master Deed controlled, not the 2006 Bylaws, and that the Master Deed placed the responsibility for maintenance and repairs of decks and porches on the Unit owners.

The issue now before us on appeal concerns interpretation of a statute, specifically Tenn. Code Ann. § 66-27-202 of the Tennessee Condominium Act of 2008. Our Supreme Court has given guidance with regard to interpreting statutes stating:

Statutory interpretation and the application of a statute to the facts of a case involve questions of law and are reviewed under a de novo standard of review with no presumption of correctness afforded to the trial court. *Tenn. Dep't of Corr. v. Pressley*, 528 S.W.3d 506, 512 (Tenn. 2017); *Arden v. Kozawa*, 466 S.W.3d 758, 764 (Tenn. 2015). We thus independently review the relevant provisions of the Charter without any deference to the interpretations of the Commission or the trial court. *See Pressley*, 528 S.W.3d at 512.

The overriding purpose of a court in construing a statute is to ascertain and effectuate the legislative intent, without either expanding or contracting the statute's intended scope. *Ray v. Madison Cnty., Tenn.*, 536 S.W.3d 824, 831 (Tenn. 2017); *Pressley*, 528 S.W.3d at 512. Legislative intent is first and foremost reflected in the language of the statute. *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 526 (Tenn. 2010). "We presume that the Legislature intended each word in a statute to have a specific purpose and meaning." *Arden*, 466 S.W.3d at 764. The words used in a statute are to be given their natural and ordinary meaning, and, because "words are known by the company they keep," we construe them in the context in which they appear and in light of the general purpose of the statute. *Lee Medical*, 312 S.W.3d at 526; *Ray*, 536 S.W.3d at 831. "We endeavor to construe statutes in a reasonable manner 'which avoids statutory conflict and provides for harmonious operation of the laws.' " *Ray*, 536 S.W.3d at 831 (citation omitted). When a statute's text is clear and unambiguous, we need look no further than the language of the statute itself. *Lee Medical*, 312 S.W.3d at 527. "We simply apply the plain meaning without complicating the task." *Pressley*, 528 S.W.3d at 513.

When, however, the language of a statute is ambiguous, we resort to rules of statutory construction and external sources in order to ascertain and give effect to the legislative intent. *Lee Medical*, 312 S.W.3d at 527; *Ray*, 536 S.W.3d at 832. These external sources may include the broader statutory scheme, the history and purpose of the legislation, public policy, historical facts preceding or contemporaneous with the enactment of the statute, and legislative history. *Lee Medical*, 312 S.W.3d at 527-28; *Ray*, 536 S.W.3d at 831-32. The language of a statute is ambiguous when it is subject to differing interpretations which yield contrary results. *In re Hogue*, 286 S.W.3d 890, 894 (Tenn. 2009). "This proposition does not mean that an ambiguity exists merely because the parties proffer different interpretations of the statute. A party cannot create an ambiguity by presenting a nonsensical or clearly erroneous interpretation of a statute." *Powers v. State*, 343 S.W.3d 36, 50 n.20 (Tenn. 2011).

*Wallace v. Metro. Gov't of Nashville and Davidson Cty.*, 546 S.W.3d 47, 52-53 (Tenn. 2018) (footnotes omitted).

In pertinent part, Tenn. Code Ann. § 66-27-202 of the Tennessee Condominium Act of 2008 provides:

**66-27-202. Applicability.**

(a) This part and parts 3-5 of this chapter apply to all condominiums created within this state after January 1, 2009. Sections 66-27-205 – 66-27-207; 66-27-303; 66-27-304; 66-27-402(a)(1)-(6) and (11)-(16); 66-27-411; 66-27-414(g); 66-27-415; 66-27-417; part 5 of this chapter; and § 66-27-203, to the extent necessary in construing any of the sections listed in this subsection (a), apply to all condominiums created in this state before January 1, 2009; but those sections apply only with respect to events and circumstances occurring after January 1, 2009, and, with the exception of § 66-27-414(g), do not invalidate or supersede existing provisions of the master deed, master lease, declaration, bylaws or plats of those condominiums existing on January 1, 2009.

Tenn. Code Ann. § 66-27-202(a) (2015). As pertinent to the case now before us on appeal, Tenn. Code Ann. § 66-27-303 provides:

(a) All provisions of the declaration and bylaws are severable.

\* \* \*

6

(c) In the event of a conflict between the declaration and the bylaws, the declaration prevails except to the extent the declaration is inconsistent with part 2, this part and parts 4 and 5 of this chapter.

Tenn. Code Ann. § 66-27-303 (2015).

As stated in Tenn. Code Ann. § 66-27-202(a), Tenn. Code Ann. § 66-27-303 will apply to Tanasi Shores, which was created prior to January 1, 2009, only with respect to the specific delineated sections and "only with respect to events and circumstances occurring after January 1, 2009 . . . ." Tenn. Code Ann. § 66-27-202(a) (2015). As Tenn. Code Ann. § 66-27-303 is one of the delineated sections, we must determine whether the required repairs to decks in 2013 constituted events and circumstances that occurred after January 1, 2009.

We agree with the Trial Court that "events and circumstances" are not defined within the statute. Nor is there any existing case law defining this phrase. We, thus, must construe Tenn. Code Ann. § 66-27-202 giving the words "their natural and ordinary meaning . . . in the context in which they appear and in light of the general purpose of the statute." *Wallace*, 546 S.W.3d at 52.

Applying their natural and ordinary meaning to the words, an event or circumstance is synonymous with an occurrence or something that happens or takes place. In the case now before us on appeal, the event or circumstance that occurred is the aging, weathering, or perhaps damage to the decks to an extent that necessitated that repairs be made. These events and circumstances occurred after January 1, 2009. As such, Tenn. Code Ann. § 66-27-303 will apply to the case now before us on appeal.

We also agree with the Trial Court that there is conflict between the Master Deed and the 2006 Bylaws with regard to the issue of whether decks and porches are part of the Unit or are part of the common area. Pursuant to Tenn. Code Ann. § 66-27-303, the declaration, in this case the Master Deed, will prevail. We, thus, must interpret the Master Deed to determine whether decks and porches are part of the Unit or are common areas.

As our Supreme Court explained in *Griffis v. Davidson County Metro. Gov't*:

In construing a deed, our primary task is to ascertain the grantor's intent from the words of the deed as a whole and from the surrounding circumstances. *Collins v. Smithson*, 585 S.W.2d 598, 603 (Tenn. 1979); *Bennett v. Langham*, 214 Tenn. 674, 383 S.W.2d 16, 18 (1964).

7

Interpretation of a deed is a question of law. *Rodgers v. Burnett*, 108 Tenn. 173, 65 S.W. 408, 411 (1901); *Mitchell v. Chance*, 149 S.W.3d 40, 45 (Tenn. Ct. App. 2004).

*Griffis v. Davidson County Metro. Gov't*, 164 S.W.3d 267, 274 (Tenn. 2005). "In construing the language in a written instrument, 'the words expressing the party's intention should be given the usual, natural and ordinary meaning.' " *Cellco P'ship d/b/a Verizon Wireless v. Shelby County*, 172 S.W.3d 574, 587 (Tenn. Ct. App. 2005) (quoting *Ballard v. N. Am. Life & Cas. Co.*, 667 S.W.2d 79, 82 (Tenn. Ct. App. 1983) ). "Any reference to subsequently executed instruments in order to glean the grantor's intent at the time of conveyancing was in error." *Id.* at 590 (discussing the requirements for establishment of an easement by implication).

As discussed above, the Master Deed provides: "Additionally, each Family Unit has a two car garage, a deck and porch, and Building #2 will feature a small courtyard." Giving the words their natural and ordinary meaning, each Unit includes a garage, deck, and porch. Plaintiffs argue in their brief on appeal that the language "Building #2 will feature a small courtyard" and the fact that Building #2 contains multiple Units indicates that the intent of the entire sentence is to delineate all of the named items as common areas since a courtyard shared by multiple Unit owners must be a common area and cannot be privately owned. Plaintiffs, however, have missed the fact that the language concerning the courtyard is different from the language concerning garages, decks, and porches. The language in the Master Deed states that each Unit "has" a garage, deck, and porch, indicating ownership of these items. The language with regard to the courtyard states that Building #2 "will feature" a courtyard. Thus, the owners of the Units in Building #2 do not have or own a courtyard. Rather, they share rights to use a courtyard, which is a feature of Building #2.

The Master Deed indicates the grantor's intent that each Unit include a garage, deck, and porch. As decks and porches are part of the Unit pursuant to the Master Deed, we find and hold, as did the Trial Court, that Plaintiffs were responsible for the repairs to their decks in 2013.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the appellants, Wayne Holloway and Jerry Brewington.

_____
D. MICHAEL SWINEY, CHIEF JUDGE