IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 7, 2003 Session

## KENNETH W. MITCHELL, ET AL. v. HOMER E. CHANCE, ET AL.

**Appeal from the Chancery Court for Humphreys County**
**No. 26-216     Robert E. Burch, Judge**

---

**No. M2002-01239-COA-R3-CV - Filed April 12, 2004**

---

This appeal involves a dispute between neighbors regarding the use of a county road in rural Humphreys County. After one of the landowners began to use the road to cross the neighboring landowners' property, the neighboring landowners erected barricades in the road and later filed a trespass action in the Chancery Court for Humphreys County. The landowners who desired to use the road counterclaimed to establish their right of way along the road. Following a bench trial, the trial court sided with the landowners desiring to use the road. On this appeal, the landowners who desire to prevent the use of the road take issue with the trial court's refusal to consider parol evidence regarding the meaning of the references to the road in the deeds. We affirm the trial court's decision that the references to the road in the deeds are not ambiguous, as well as its decision to admit extrinsic evidence to determine the location of the road. We have also determined that the evidence fully supports the trial court's decision regarding the location and dimensions of the road.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

George E. Copple, Jr., Nashville, Tennessee, for the appellants, Kenneth W. Mitchell and Michael S. Clement.

John Lee Williams, Waverly, Tennessee, for the appellees, Homer E. Chance and Chance Limited Partnership.

### OPINION

### I.

Dr. Kenneth Mitchell and Michael Clement hunted together frequently in Hickman County. In 1994, Dr. Mitchell purchased 32 acres of wooded property in Hickman County to have a place to hunt. One year later, when a 76-acre tract of property on Dr. Mitchell's western boundary line became available for sale, Dr. Mitchell invited Mr. Clement to join him in buying the property for recreation and hunting. In October 1995, Dr. Mitchell and Mr. Clement purchased the 76-acre tract and an adjoining one-half acre tract from Alfred and Brenda Peek.

The 76-acre tract lay between two other tracts owned by the Peeks. One tract to the northwest contained 114 acres; the other tract to the south contained 31 acres. An established dirt road called "Woods Road" ran along the boundary line of the 76-acre and the 114-acre tracts, and then turned south and ran over a portion of the 76-acre tract. The Peeks' deed conveying the 76-acre tract to Dr. Mitchell and Mr. Clement stated that the conveyance was "subject to the right-of-way of Woods Road" and also referred to "Woods Road" in the metes and bounds description of the 76-acre tract.[1] The Peeks also granted Dr. Mitchell and Mr. Clement a 50-foot road easement along the western boundary of their 31-acre tract. Apparently, the southern terminus of Woods Road connected with this road easement.[2]

In March 1996, the Peeks sold their 31-acre tract to Homer and Margaret Chance. The deed stated that it was subject to the right of way of Little Hurricane Creek Road and to the 50-foot road easement along the western boundary that had been granted to Dr. Mitchell and Mr. Clement six months earlier. In June 1996, the Chances purchased the Peeks' remaining 114-acre tract. This deed also contained references to "Woods Road" in its metes and bounds description.[3] Thus, from and after March 1996, the 114-acre and the 31-acre tracts owned by the Chances were separated by the 76-acre tract owned by Dr. Mitchell and Mr. Clement.

In the summer of 1996, Dr. Mitchell and Mr. Clement hired a contractor to bulldoze a large field along the boundary line between their 76-acre tract and the Chances' 114-acre tract. They also had Woods Road bulldozed from the 50-foot road easement at the southeast corner of their tract towards the Chances' property in order to widen it and clear out the overgrowth around the road. Mr. Chance and other members of his family began to use the portion of Woods Road crossing the 76-acre tract to access their 31-acre tract in order to cut hay or tend to their soybean field. They used Woods Road from June 1996 through the next year with no objection from either Dr. Mitchell or Mr. Clement.

Sometime in 1997, Dr. Mitchell and Mr. Clement erected barriers over Woods Road to prevent the Chances from using the road. The Chances continued to use Woods Road by simply driving around the barriers. In July 1998, Dr. Mitchell and Mr. Chance discussed an alternate route

---

[1]The deed stated in pertinent part:

thence North 65 degrees 25 minutes East 293.40 feet to a 6 inch maple tree beside the Woods Road; thence with the center of the Woods Road, North 36 degrees East 473.60 feet; thence North 22 degrees 20 minutes East 233.13 feet to the center of the road; thence leaving the road with the new fence line these bearings and distances. . . .

[2]See Appendix 1.

[3]The deed to the 114 acre tract stated in pertinent part:

thence North 65 degrees 25 minutes East 293.40 feet to a 6 inch Maple tree at the Woods Road; thence with the Woods Road, North 36 degrees East 473.60 feet; thence North 22 degrees 20 minutes East 233.13 feet to a point in the Woods Road; thence leaving the road with the fence line these bearings and distances. . . .

-2-

for the Chances to access their 31-acre tract. Later, in July 1999, Mr. Chance hired a bulldozer operator to clear a road between their 31-acre tract and their 114-acre tract.

On September 10, 1999, Dr. Mitchell and Mr. Clement filed a trespass action against Mr. Chance in the Chancery Court for Humphreys County. Mr. Chance answered and counterclaimed that he had permission from Dr. Mitchell to make the new road as an accommodation for relinquishing his right to use Woods Road. Mr. Chance asserted that this right to use Woods Road was reflected in the language of the Peeks' deed of their 76-acres to Dr. Mitchell and Mr. Clement. The trial court later permitted the Chance Limited Partnership to intervene because it had become the successor in interest to both the 114-acre and the 31-acre tracts purchased by the Chances.

Mr. Chance objected to the original trespass claim being brought in chancery court because it simply sought damages. After Dr. Mitchell and Mr. Clement voluntarily dismissed their complaint without prejudice,[4] the trial court conducted a bench trial on April 2, 2002 solely on Mr. Chance's counterclaim. On April 16, 2002, the trial court entered a final order concluding that the 76-acre tract was subject to an easement or right of way denominated as "Woods Road" that had been reserved by the Peeks for the purpose of ingress and egress between the 31-acre tract and the 114-acre tract. The court also concluded that this right of way passed to the Chances when the Peeks sold them the two tracts. Accordingly, the trial court concluded that the Chance Limited Partnership was "entitled to free and uninterrupted use and passage for ingress, egress, and regress" over Woods Road and that Dr. Mitchell and Mr. Clement should be enjoined from interfering with the Chances' use of the right of way. Dr. Mitchell and Mr. Clement have appealed.

## II.
### THE AMBIGUITY OF THE REFERENCES TO "WOODS ROAD" IN DR. MITCHELL'S AND MR. CLEMENT'S DEED

The parties agree that the 1995 deed for the 76-acre tract created an easement appurtenant with regard to Woods Road; however, they disagree regarding the extent of this easement. Dr. Mitchell and Mr. Clement assert that the reference to Woods Road is a latent ambiguity requiring the introduction of parol evidence to ascertain the parties' intentions.[5] Mr. Chance responds that the consideration of parol evidence is inappropriate because the reservation of the Woods Road right of way is not ambiguous and that it applies to the entire road as it existed when Dr. Mitchell and Mr. Clement purchased the 76-acre tract from the Peeks. We have determined that Mr. Chance has the better argument.

---

[4] They then re-filed their trespass complaint in the Circuit Court for Humphreys County.

[5] Dr. Mitchell and Mr. Clement believe that parol evidence demonstrates that they and the Peeks intended to reserve Woods Road as a right of way only to the extent that it runs along the border between their two tracts and that they did not intend for the right of way to run across the 76-acre tract.

## A.

The rules governing the interpretation of deeds are well-settled and are designed to enable the courts to ascertain the intention of the parties to the deed. *Collins v. Smithson*, 585 S.W.2d 598, 603 (Tenn. 1979); *Barber v. Westmoreland*, 601 S.W.2d 712, 714 (Tenn. Ct. App. 1980). The courts should first seek the parties' intention by examining the words in the deed, *Hutchison v. Board*, 194 Tenn. 223, 227-28, 250 S.W.2d 82, 84 (1952), and by considering these words in the context of the deed as a whole. *Collins v. Smithson,* 585 S.W.2d at 603; *Barber v. Westmoreland*, 601 S.W.2d at 714; *Quarles v. Arthur,* 33 Tenn. App. 291, 295, 231 S.W.2d 589, 590 (1950).

The courts customarily decline to consider parol evidence that adds to, varies, or otherwise contradicts the language of the deed. *Stickley v. Carmichael*, 850 S.W.2d 127, 132 (Tenn. 1992). However, parol evidence may be admissible to remove a latent ambiguity in the deed. *Stickley v. Carmichael*, 850 S.W.2d at 132; *Estate of Burchfiel v. First United Methodist Church*, 933 S.W.2d 481, 482 (Tenn. Ct. App. 1996). A latent ambiguity is found where

> the equivocality of expression, or obscurity of intention, does not arise from the words themselves, but from the ambiguous state of extrinsic circumstances to which the words of the instrument refer, and which is susceptible of explanation by the mere development of extraneous facts, without altering or adding to the written language, or requiring more to be understood thereby than will fairly comport with the ordinary or legal sense of the words and phrases made use of.

*Weatherhead v. Sewell,* 28 Tenn. (9 Humph.) 272, 295 (1848); *Estate of Burchfiel v. First United Methodist Church*, 933 S.W.2d at 482.

On the other hand, parol evidence is inadmissible to explain a patent ambiguity contained within the deed. *Estate of Burchfiel v. First United Methodist Church*, 933 S.W.2d at 482. A patent ambiguity is defined as

> one produced by the uncertainty, contradictoriness, or deficiency of the language of an instrument, so that no discovery of facts, or proof of declarations, can restore the doubtful or smothered sense without adding ideas which the actual words will not themselves sustain.

*Weatherhead v. Sewell,* 28 Tenn. (9 Humph.) at 295; *Estate of Burchfiel v. First United Methodist Church*, 933 S.W.2d at 482. In other words, a patent ambiguity is one which appears on the face of the deed; while a latent ambiguity is one which is not discoverable from a perusal of the deed but which appears upon consideration of the extrinsic circumstances.

The interpretation of a deed is a matter of law. *Rodgers v. Burnett,* 108 Tenn. 173, 184, 65 S.W. 408, 411 (1901)*; City of Memphis v. Wait*, 102 Tenn. 274, 277, 52 S.W. 161, 162 (Tenn. 1899); *Brown v. Brown*, 45 Tenn. App. 78, 95-96, 320 S.W.2d 721, 728 (1958). Accordingly, we will review the trial court's conclusion that the deed to the 76-acre tract did not contain a latent ambiguity

requiring the introduction of parol evidence without Tenn. R. App. P. 13(d)'s presumption of correctness.

## B.

The pivotal question here is whether the deed's recital that "this property is subject to right-of-way of Woods Road" creates a latent ambiguity. The words themselves are not ambiguous, and we have determined that the evidence does not depict the existence of an ambiguous state of extrinsic circumstances regarding the existence of Woods Road. When the Peeks conveyed the 76-acre tract to Dr. Mitchell and Mr. Clement, Woods Road not only ran along the boundary line between the 76-acre tract and the 114-acre tract, it also existed as a dirt road between the Peeks' 114-acre tract and their 31-acre tract. The road clearly ran across the southern portion of the 76-acre tract and connected the Peeks' two tracts.[6]

Prior to the conveyance, Mr. Peek used Woods Road to access the 31-acre tract from his 114-acre farm. After the Peeks sold the 31-acre and the 114-acre tracts to the Chances, Mr. Chance and his family continued to use Woods Road in a similar fashion. From the language of the deed and the surrounding circumstances, the Peeks clearly intended to reserve a right-of-way over the entire Woods Road. Otherwise, they would have included language to limit the easement to just the property line portion of the road. Accordingly, because no latent ambiguity arose regarding the meaning of "Woods Road," the trial court properly declined to consider parol evidence regarding the parties' intent with regard to the Woods Road easement.

## III.
### THE EXTENT AND LOCATION OF THE WOODS ROAD RIGHT OF WAY

The absence of a legal description of the Woods Road right of way also required the trial court to ascertain and establish the location of the road. The court considered parol evidence to ascertain the location and dimensions of the right of way. We have determined that the trial court properly considered the parol evidence and that the evidence supports the trial court's determination regarding the location and dimensions of the Woods Road right of way.

## A.

The Woods Road right of way at issue in this case is simply an easement that entitles its holder to pass through the property over which the easement runs.[7] Even though drafters of express easements should prepare a legal description of both the servient tenement and the precise portion

---

[6] *See* Appendix 1. The surveyor used dash marks to indicate that Woods Road ran across Dr. Mitchell's and Mr. Clement's property.

[7] When parties use terms such as "right of way," "road," or "roadway" in a deed as a limitation on the use of land, courts should construe such language as strong, almost conclusive, evidence that the interest conveyed is an easement. JON W. BRUCE & JAMES W. ELY, JR., THE LAW OF EASEMENTS & LICENSES IN LAND § 1:22 (2002) ("THE LAW OF EASEMENTS").

of the servient tenement over which the easement runs, deeds or other instruments failing to indicate an easement's location or dimensions are commonplace. THE LAW OF EASEMENTS § 7:4. However, these sorts of omissions and oversights are not necessarily fatal to the easement. THE LAW OF EASEMENTS § 7:2.

If the description of the easement in the deed or other instrument is inadequate or nonexistent, the courts may consider extrinsic evidence to ascertain the parties' intent regarding the location and dimensions of the easement. *Lazy Dog Ranch v. Telluray Ranch Corp.,* 965 P.2d 1229, 1237-38 (Colo. 1998); *Anchors v. Manter*, 714 A.2d 134, 140 (Me. 1998); *Highway 7 Embers, Inc. v. Northwestern Nat'l Bank*, 256 N.W.2d 271, 277 (Minn. 1977); *Sacco v. Narragansett Elec. Co.*, 505 A.2d 1153, 1155-56 (R.I. 1986); *R.C.R., Inc. v. Rainbow Canyon, Inc.*, 978 P.2d 581, 586 (Wyo. 1999). The courts should take into consideration (1) the purpose of the easement, (2) the geographic relationship between the dominant and the servient tenements, (3) the use of each of the tenements, (4) the benefit to the easement holder compared to the burden on the servient tenement owner, (5) the admissions of the parties, and (6) the use existing at the time of the easement's creation. THE LAW OF EASEMENTS § 7:6.

When called upon to determine the location and dimensions of an easement, the courts focus on the circumstances existing when the easement was created. *Wilson v. DeGenaro*, 415 A.2d 1334, 1339 (Conn. Super. Ct. 1979); *Vallas v. Johnson*, 390 N.E.2d 939, 941 (Ill. App. Ct. 1979); *R.C.R., Inc. v. Rainbow Canyon, Inc.*, 978 P.2d at 587. However, the use of an easement commenced after its execution and to which the owner of the servient tenement acquiesces can also provide persuasive evidence of the intended location of the easement. *Isenberg v. Woitchek*, 356 P.2d 904, 907 (Colo. 1960); *Peters v. Milks Grove Special Drainage Dist. No. 1 of Iroquois County*, 610 N.E.2d 1385, 1389 (Ill. App. Ct. 1993); *Hall v. Allen,* 771 S.W.2d 50,53 (Mo. 1989); *Parrish v. Hayworth*, 532 S.E.2d 202, 206 (N.C. Ct. App. 2000); *R.C.R., Inc. v. Rainbow Canyon, Inc.*, 978 P.2d at 587.

**B.**

When a deed creating an easement explicitly refers to an existing road, the courts commonly construe the location and dimensions of the intended easement to conform with the location and dimensions of the road. *Wilson v. DeGenaro*, 415 A.2d at 1335-36; *Cleveland v. Tinaglia*, 582 N.W.2d 720, 724-25 (S.D. 1998); *Waskey v. Lewis*, 294 S.E.2d 879, 881 (Va. 1982). Thus, the fact that the Peeks' 1995 deed describes the easement as "Woods Road" is strong evidence that the intended location and dimensions of the easement were coextensive with Woods Road.

The trial court's legal description of Woods Road is supported by the testimony in the record. Mr. Peek, Dr. Mitchell, and Mr. Clement testified that Woods Road was an existing path long before the Peeks conveyed the 76-acre tract to Dr. Mitchell and Mr. Clement. Mr. Chance, Dr. Mitchell, Mr. Clement, and Mr. Peek all testified that Woods Road ran along the boundary line between the 114-acre tract and the 76-acre tract, crossed the southern portion of the 76-acre tract, and then intersected with the 50-foot road easement to Little Hurricane Creek Road on the 31-acre tract.

In addition, the September 27, 1995 survey map shows Woods Road running along the western boundary line of the 76-acre and the 114-acre tracts. While the map does not show the path

that Woods Road takes across Dr. Mitchell's and Mr. Clement's property, the surveyor indicated that the road continues across the 76-acre tract by drawing dashed lines into the property and labeling it "Woods Road."[8]  Similarly, a 1998 aerial photograph clearly shows the road that runs along the border of the 114-acre and the 76-acre tracts and then crosses the southern portion of the 76-acre tract. Based on our review of the evidence, we have concluded that the record supports the trial court's legal description of the location and dimensions of Woods Road.[9]

## IV.
### COMPLIANCE WITH THE STATUTE OF FRAUDS

As a final argument, Dr. Mitchell and Mr. Clement insist that the trial court's decree violated the statute of frauds [Tenn. Code Ann. § 29-2-101(a)(4) (2000)] because it granted a right of way broader than that encompassed by the words in the deed.  We find that this argument is without merit.  Dr. Mitchell's and Mr. Clement's deed to the 76-acre tract satisfied the statute of frauds because it was in writing and signed by the parties to be charged.  The clear reservation of an easement over Woods Road is contained within the deed, and we have affirmed the trial court's conclusion that the easement ran across Dr. Mitchell's and Mr. Clement's land.  No additional writing was required to enforce the easement.

## V.

We affirm the judgment and remand the case to the trial court for whatever further proceedings may be required.  We tax the costs of this appeal jointly and severally against Kenneth W. Mitchell and Michael S. Clement for which execution, if necessary, shall issue.

_____
WILLIAM C. KOCH, JR., J.

---

[8]See Appendix 1.

[9]The trial court's description of the location of Woods Road compensates for the deficiency in the survey regarding precisely where Woods Road crossed the 76-acre tract.  The relevant portion of the court's legal description states "thence leaving the common boundary line along and with the meanders of the existing road in a generally southeasterly direction to a point in the south boundary line of said Tract 2."

