IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 16, 2014 Session

# PHYLLIS WILLIAMS v. LARRY STOVESAND LINCOLN MERCURY, INC., ET AL.

Appeal from the Chancery Court for Davidson County
No. 12586I     Claudia C. Bonnyman, Chancellor

No. M2014-00004-COA-R3-CV - Filed October 15, 2014

This is a dispute arising from the interpretation of a contract made during an asset sale of one automobile dealership to another. Seller filed a complaint seeking to collect payment pursuant to the contract on the ground that the contract was a promissory note upon which the buyer had defaulted. Buyer argued that the contract was actually for the payment of future rents to Seller, who remained the owner of the real estate upon which Buyer operated his automobile dealership. Seller filed a motion for summary judgment. The trial court determined that, because the contract was an unambiguous promissory note and Buyer admitted non-payment, Seller was entitled to judgment as a matter of law. Discerning no error, we affirm and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the Court, in which JOHN W. MCCLARTY, J., and BRANDON O. GIBSON, J., joined.

Thomas B. Russell, Nashville, Tennessee, for the appellants, Larry Stovesand Lincoln Mercury, Inc., and Paducah Ford, Inc., d/b/a Paducah Ford Lincoln Mercury, Inc.

F. Dulin Kelly and Clinton L. Kelly, Hendersonville, Tennessee, for the appellee, Phyllis Williams.

**OPINION**

In 1980, Ms. Phyllis Williams ("Ms. Williams" or "Appellee") and her late husband Bob Williams opened Riverside Lincoln-Mercury ("Riverside") in Madison, Tennessee. In 1987, Ford Motor Credit made a loan to Mr. and Mrs. Williams. In 1993, Mr. Williams died, and Ms. Williams became President of Riverside. The Ford Motor Credit loan made in 1987 was modified several times between 1987 and 2004. In 2004, Ms. Williams was making installment payments on the loan in the amount of approximately $20,000.00 per month.

In 2004, Larry Stovesand operated an automobile dealership in Paducah, Kentucky. One of his businesses was Paducah Ford-Lincoln-Mercury, Inc. ("Paducah Ford"). At this time, Ms. Williams was in her 70s and testified that owning a car dealership was "getting harder for us to do," especially in light of the $20,000.00 monthly payment on the Ford Motor Credit loan. Since Mr. Stovesand was interested in buying a dealership in the Nashville area, he contacted Ms. Williams about buying the assets of Riverside.

In late summer 2004, Mr. Stovesand registered Larry Stovesand Lincoln Mercury, Inc. ("Stovesand Lincoln," collectively with Paducah Ford, "Appellants") as a business in Tennessee. Registering Stovesand Lincoln in Tennessee allowed Mr. Stovesand to operate a car dealership in Tennessee once he had purchased Riverside's assets.

On September 2, 2004, Riverside and Paducah Ford entered into an Asset Purchase Agreement ("Original Asset Purchase Agreement"). The Original Asset Purchase Agreement allowed Paducah Ford to purchase the tangible personal property owned by Riverside, including new and used vehicles, parts, accessories, machinery, shop equipment, and furniture. It is undisputed that, in the Original Asset Purchase Agreement, Paducah Ford purchased Riverside's fixed assets for $315,145.00 and its goodwill for $1,180,000.00. Paducah Ford agreed to pay all but $680,000.00 of the purchase price at closing. Paducah Ford agreed to pay the remaining $680,000.00 in two promissory notes. The first note was for $500,000.00 and was to be paid over a five year period. The second note was for $180,000.00 to be paid over three years. The Original Asset Purchase Agreement did not include a sale of the real property, and Ms. Williams remained the owner of the real property. During the execution of the Original Asset Purchase Agreement and all of the subsequent amendments, both parties were represented by counsel.

Although Ms. Williams owned the real property upon which Riverside was located,

---

[1]The trial court decided this case on a motion for summary judgment. Thus, the facts have been elicited from the pleadings filed by the parties.

she had previously entered into a lease with Ford Leasing Development Company ("Ford Leasing") regarding the use of the real property, presumably to operate a Ford dealership .[2] However, pursuant to the Original Asset Purchase Agreement, Ford Leasing entered into a sublease with Paducah Ford. Paducah Ford was required to make the $20,800.00 sublease payments directly to Ms. Williams under this agreement. Once Ms. Williams received the sublease rent, she then paid Ford Credit for her and her late husband's loan. Eventually, in December 2006, Ms. Williams sought Ford Leasing's permission for Stovesand Lincoln to remit the rental payments directly to Ford Leasing. From this point on, Stovesand Lincoln sent the $20,800.00 per month sublease rent payments directly to Ford Leasing. The sublease was for a period of nine years.

Despite the existing Original Asset Purchase Agreement, the parties continued to negotiate aspects of their agreement. On September 29, 2004, the parties executed the First Amendment to the Asset Purchase Agreement ("First Amendment"). The First Amendment reduced the purchase price of the fixed assets from $315,145.00 to $115,000.00.[3]

On October 6, 2004, the parties executed the Second Amendment to the Asset Purchase Agreement ("Second Amendment"). In the Second Amendment, Paducah Ford allegedly agreed to pay Riverside an additional $482,400.00 as additional compensation for goodwill. The Second Amendment purports to allow payment of this "Additional GoodWill Purchase Price" in thirty-six monthly payments of $4,200.00 and then in thirty-six monthly payments of $9,200.00. The Second Amendment provides that these "payment obligations shall be set forth in a promissory note containing mutually agreeable terms." Further, in an option-to-purchase clause contained in the Second Amendment, the parties agree that "[t]he note shall also provide that it shall terminate on the date the Real Estate is sold to [Paducah Ford] . . . and that no sums which come due after the note terminates shall be owed to Seller."

Pursuant to the Second Amendment, Mr. Stovesand, on behalf of Stovesand Lincoln, executed a document titled "Promissory Note"[4] on November 19, 2004. The Promissory Note purports to secure payment for the additional goodwill purchased pursuant to the Second Amendment. The Promissory Note indicates that the principal amount is

---

[2]The record on appeal neither specifies why Riverside entered into the lease with Ford Leasing, nor does it include the actual lease. However, neither party has raised this issue for review.

[3]The record on appeal does not indicate why the parties opted to reduce the purchase price of Riverside's fixed assets.

[4] In their brief, Appellants refer to this document as a "Rental Agreement." The title of the document refers the agreement as a "Promissory Note"; therefore, we will use this term to refer to this document throughout this Opinion.

$482,000.00. The Promissory Note refers to Stovesand Lincoln as the "Maker," refers to Riverside as the "Lender" and "Holder," and provides a promise to pay to the order of Riverside. Similar to the Second Amendment, the Promissory Note also provides that, "Upon the closing on the Sale of Real Estate, this Note shall be deemed to be null and void as to all payments which are scheduled to come due after the date of said closing." In effect, this clause provided Stovesand Lincoln with an option to purchase the real estate that it would operate on. However, if Stovesand Lincoln chose not to exercise the option to purchase, the Promissory Note provided that Stovesand Lincoln remained obligated to pay monthly installment payments on the Promissory Note. Simultaneous with the Promissory Note, Mr. Stovesand executed an unlimited irrevocable guaranty on behalf of Paducah Ford, a limited irrevocable guaranty on behalf of himself individually, and a security agreement on behalf of Stovesand Lincoln. The Promissory Note indicated that payment was to begin on December 1, 2007.

Riverside issued a Bill of Sale on November 19, 2004. The Bill of Sale listed the fixed assets ($115,000.00), goodwill ($1,180,000.00), note for goodwill ($500,000.00), and note for goodwill ($180,000.00). Stovesand Lincoln paid $680,000.00 at closing for the goodwill, but the remainder was covered by the notes. However, the $482,000.00 Promissory Note for additional good will (pursuant to the Second Amendment) was not listed on the Bill of Sale.

At the end of the first three years specified for repayment of the Promissory Note, Stovesand Lincoln had not exercised its option to purchase the real estate and thereby terminate its payment obligation. Stovesand Lincoln began paying $4,200.00 per month during the third through sixth years pursuant to its obligation under the Promissory Note. Again, at the end of the sixth year, Stovesand Lincoln had not exercised its option to purchase the real estate, and it began paying $9,200.00 per month on the Promissory Note pursuant to its terms.

As of 2011, Stovesand Lincoln was making two payments. The first payment was $20,800.00 per month to Ford Credit for the sublease of the real property. The second payment was $9,200.00 on the Promissory Note payable to Riverside. Later in 2011, Ford[5] informed Mr. Stovesand that it only wanted one Lincoln dealership in the Nashville area. Accordingly, Mr. Stovesand was forced to close Stovesand Lincoln on July 31, 2011. However, Stovesand Lincoln never exercised its option to purchase the real estate.

After Stovesand Lincoln closed, it stopped paying the $20,800.00 monthly payments to Ford Credit under its sublease agreement. Shortly thereafter, on August 1, 2011,

---

[5]The record on appeal is unclear which division of Ford contacted Mr. Stovesand at this time.

Stovesand Lincoln also stopped paying $9,200.00 per month to Riverside pursuant to the Promissory Note. On September 20, 2011, Ms. Williams's attorney made a formal demand for Stovesand Lincoln to cure its alleged default within thirty days. Stovesand Lincoln made no further payments.[6]

On April 18, 2012, Ms. Williams brought this action against Mr. Stovesand's two automotive dealerships, Stovesand Lincoln and Paducah Ford, to collect on the Promissory Note that was made pursuant to the Second Amendment. On February 12, 2013, Ms. Williams moved for summary judgment. She included a Rule 56.03 statement of undisputed facts in support of her motion. The only note at issue in this appeal is the Promissory Note that was executed pursuant to the Second Amendment. In their response to Ms. Williams's motion for summary judgment, Appellants argued that a dispute of a material fact existed and that Ms. Williams would have difficulty proving an essential element of her claim—namely, that the $482,400.00 promissory note was for the purchase of goodwill and not for rent. After hearing, the trial court granted summary judgment in favor of Ms. Williams. Declining to "create an ambiguity where none exists in the contract," the trial court found that the contract was indeed a promissory note, and Appellants were in default. The trial court stated that the disputes of fact raised by Appellants were not material to the meaning of the plain and ordinary contract terms. In light of "no written modification indicating that the [] contract was intended to be for rent instead of a promissory note," the court granted summary judgment in favor of Ms. Williams.

### Issue

Stovesand Lincoln and Paducah Ford filed a timely appeal, raising one issue for review, which is taken from their brief: "Whether the trial court erred by granting summary judgment in favor of Phyllis Williams and finding that a $482,400.00 Note was a Promissory Note and not a document to memorialize future rents."

### Standard of Review

A trial court's decision to grant a motion for summary judgment presents a question of law. Our review is, therefore, *de novo* with no presumption of correctness afforded to the trial court's determination. **Bain v. Wells**, 936 S.W.2d 618, 622 (Tenn. 1997). This Court must make a fresh determination that the requirements of Tennessee Rule of Civil Procedure

---

[6]Around the time that Stovesand Lincoln closed on July 31, 2011, Ford Credit contacted Ms. Williams and informed her it planned to foreclose on the real property to satisfy the loan to her and her late husband. On November 1, 2011, Ms. Williams sold the real property to a third party for $2.1 million and used the proceeds to satisfy the remainder of the Ford Credit loan.

56 have been satisfied. ***Absure v. Methodist Healthcare-Memphis Hosps.***, 325 S.W.3d 98, 103 (Tenn. 2010). In evaluating the trial court's decision to grant summary judgment, we review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. ***Mooney v. Sneed***, 30 S.W.3d 304, 305–06 (Tenn. 2000); ***Byrd v. Hall***, 847 S.W.2d 208, 210–11 (Tenn. 1993).

When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. According to the Tennessee General Assembly:

> In motions for summary judgment in any civil action in Tennessee, the moving party who does not bear the burden of proof at trial shall prevail on its motion for summary judgment if it:
>
> (1) Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or
> (2) Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the non-moving party's claim.

Tenn. Code Ann. § 20-16-101 (effective on claims filed after July 1, 2011).

## Law

The salient issue in this case concerns the proper interpretation of the Promissory Note. As such, we must consider the rules of contract interpretation. The interpretation of a contract is a question of law and not one of fact. ***Pitt v. Tyree Org., Ltd.***, 90 S.W.3d 244, 252 (Tenn. Ct. App. 2002). Each provision must be construed in light of the entire agreement, and the language in each provision must be given its natural and ordinary meaning. ***Buettner v. Buettner***, 183 S.W.3d 354, 359 (Tenn. Ct. App. 2005). When interpreting a contract, the court's aim is to ascertain and give effect to the parties' intent. ***Harrell v. Minn. Mut. Life Ins.***, 937 S.W.2d 809 (Tenn. 1996). If a contract is unambiguous, a court must interpret it as written and not in accordance with a party's unexpressed intent. ***Pitt***, 90 S.W.2d at 252; ***Sutton v. First Nat. Bank of Crossville***, 620 S.W.2d 526 (Tenn. Ct. App. 1981).

Additionally, where a contract is unambiguous, the court may not look beyond its four corners to ascertain the parties' intention. ***Rogers v. First Tenn. Bank Nat'l Ass'n***, 738

6

S.W.2d 635, 637 (Tenn. Ct. App. 1987); ***Bokor v. Holder***, 722 S.W.2d 676, 679 (Tenn. Ct. App. 1986). The language used in a contract must be taken and understood in its plain, ordinary, and popular sense. ***Ballard v. North Am. Life & Cas. Co.***, 667 S.W.2d 79 (Tenn. Ct. App. 1983); ***Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.***, 521 S.W.2d 578 (Tenn. 1975). When parties reduce their agreement to writing, the law favors enforcing these agreements as written. ***Bob Pearsall Motors, Inc.***, 521 S.W.2d 578 at 580. Stated another way, the court, when interpreting a contract, "does not attempt to ascertain the parties' state of mind at the time the contract was executed, but rather their intentions as actually embodied and expressed in the contract as written." ***Union Planters Nat'l Bank v. Amer. Home Assur. Co.***, 865 S.W.2d 907, 912 (Tenn. Ct. App. 1993).

The role of a court is to enforce an unambiguous contract as it is written unless it is being challenged on the basis of fraud or mistake. ***Boyd v. Comdata Network, Inc.***, 88 S.W.3d 203, 223 (Tenn. Ct. App. 2002) (citing ***Wills & Wills, L.P. v. Gill***, 54 S.W.3d 283, 286–87 (Tenn. Ct. App. 2001). As our Supreme Court stated:

> The parties to the contract herein were competent to contract and entered into this contract fairly and understandingly without fraud and for a consideration and thus it is that when parties thus contract the courts are not concerned with the wisdom or folly of their contract.

***Chapman Drug Co. v. Chapman***, 341 S.W.2d 392, 398 (Tenn. 1960). This Court's obligation is to interpret the contract as presented, but not to relieve a party of its obligations because the obligation proves to be onerous or burdensome. ***Boyd***, 88 S.W.3d at 223; Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 70:209, at 232 (4th ed. 2003) (stating that "[c]ourts are not in the business of rewriting contracts to bail out parties who have failed to prudently construct their business transactions"). Tennessee law plainly reflects the public policy giving parties the freedom to strike their own bargains. Steven W. Feldman, *Tennessee Practice: Contract Law & Practice* § 1:6 at 17 (2006). Similarly, the courts are "not at liberty to make a new contract for parties who have spoken for themselves." ***Smithart v. John Hancock Mut. Life Ins. Co.***, 71 S.W.2d 1059, 1063 (Tenn. 1934).

However, where a provision is ambiguous—that is, susceptible to more than one reasonable interpretation—the parties' intent cannot be determined by a literal interpretation of the language. *See* ***Planters Gin Co. v. Fed. Compress & Warehouse Co.***, 78 S.W.2d 885, 890 (Tenn. 2002). In this situation, the court must resort to other rules of construction. ***Id.*** One such rule of construction is *expressio unius est exclusio alterius*, which means that the expression of one thing implies the exclusion of others. Bryan A. Garner, *A Dictionary of*

*Modern Legal Usage* 432 (2d ed. 1987).  Only if ambiguity remains after using the rules of construction does the legal meaning of the contract become a question of fact.  ***Id.***  Then, the court must examine other evidence to surmise the parties' intention, including negotiations leading up to the contracts, formation, the course of conduct between the parties, and any statements of the parties that could guide the court in ascertaining the parties' intentions.  ***Pinson & Associates, Inc. v. Kreal***, 800 S.W.2d 486, 487 (Tenn. Ct. App. 1990); ***Jackson v. Miller*** 776 S.W.2d 115, 118 (Tenn. Ct. App. 1989); ***Patterson v. Anderson Motor Co.*** 319 S.W.2d 492, 297 (Tenn. Ct. App. 1958).

Where several instruments are executed as part of the same agreement, the court must construe them with reference to each other.  ***Real Estate Mgmt. v. Giles***, 293 S.W.2d 596, 599 (Tenn. 1956).  Where an executed agreement refers to the other documents, all of the documents must be construed together as the contract of the parties.  ***Smith v. Futris***, No. W1998-00181-COA-R3-CV, 2001 WL 432497 (Apr. 23, 2001), *perm. app. denied* (Tenn. Oct. 22, 2001); ***Hardeman Cnty. Bank v. Stallings***, 917 S.W.2d 695, 698 (Tenn. Ct. App. 1995); ***Phenix Square, Ltd. v. Wright***, 682 S.W.2d 518, 520 (Tenn. Ct. App. 1984).

Finally, it is well settled in Tennessee that where the terms of an agreement are unambiguous, the parol evidence rule bars extraneous evidence used "to alter, vary, or qualify the plain meaning of an unambiguous written contract."  ***Staubach Retail Servs.-Se., LLC v. H.G. Hill Realty Co.***, 160 S.W.3d 521, 525 (Tenn. 2005) (quoting ***GRW Enters., Inc. v. Davis***, 797 S.W.2d 606, 610 (Tenn. Ct. App. 1990)).  The parol evidence rule also distinguishes between patent and latent ambiguities.  A patent ambiguity is one "produced by the uncertainty, contradictoriness, or deficiency in the language of an instrument."  ***Mitchell v. Chance***, 149 S.W.3d 40, 44 (Tenn. Ct. App. 2004) (quoting ***Weatherhead v. Sewell***, 28 Tenn. (9 Hum.) 272, 295–96 (1848)).  In turn, a latent ambiguity exists:

> [W]here the equivocality of expression, or obscurity of intention does not arise from the words themselves, but from the ambiguous state of extrinsic circumstances to which the words of the instrument refer, and which is susceptible of explanation by the mere development of extraneous facts, without altering or adding to the written language, or requiring more to be understood thereby than will fairly comport with the ordinary or legal sense of the words or phrases made use of.

***Id.*** (quoting ***Weatherhead***, 28 Tenn. at 295); *see also* ***Teague v. Sowder***, 114 S.W. 484, 488–89 (Tenn. 1908).  Parol evidence is not admissible to remove a patent ambiguity, but it is admissible to remove a latent ambiguity.  ***Id.*** at 44 (citing ***Stickley v. Carmichael***, 850 S.W.2d 127, 132 (Tenn. 1992)); *see also* ***Ward v. Berry & Assocs., Inc.***, 614 S.W.2d 372, 374 (Tenn. Ct. App. 1981).  However, Tennessee Rule of Civil Procedure 56.06, which

governs summary judgment, states that affidavits in support of and in opposition of summary judgment "shall set forth such facts *as would be admissible in evidence*." Tenn. R. Civ. P. 56.06 (emphasis added); *see also **Dick Broadcasting Co. v. Oak Ridge FM, Inc.***, 395 S.W.3d 653, 673 (Tenn. 2013) (opining that it would be inadvisable for a trial court to consider extraneous evidence where the written agreement clearly and unambiguously supports a contrary conclusion).

**Analysis**

To determine whether the trial court properly granted summary judgment, it is crucial to determine whether the contract is in fact ambiguous and whether the parol evidence rule therefore bars extrinsic evidence to aid in interpretation. In their brief, Appellants argue that summary judgment is inappropriate because material issues of fact remain in dispute, namely that the contract at issue is actually an agreement for the rental of Riverside's real property and not a promissory note.

We begin our analysis with the actual language from the contract, which consists of multiple documents. *See **Real Estate Mgmt. v. Giles***, 293 S.W.2d 596, 599 (Tenn. 1956) (holding that when an agreement consists of multiple documents, the court shall construe them with reference to others). As an amendment to the Original Asset Purchase Agreement, the Second Amendment provides, in relevant part:

> [T]he Additional GoodWill Purchase Price shall be payable in thirty-six consecutive monthly payments of $4,200 each commencing on the first day of the thirty seventh month following the Closing, and in thirty-six (36) monthly payments of $9,200 each commencing for the first day of the month the final $4,200 monthly payment is due. These payment obligations shall be set forth in a promissory note containing mutually agreeable terms, including but not limited to those set forth in Section 2(a)(I). The note shall also provide that it shall terminate on the date the Real Estate is sold to Purchaser, [Ford Leasing] or their assigns . . . and that no sums which come due after the note terminates shall be owed to Seller.

Regarding the sublease, the Second Amendment goes on to state, in relevant part:

> For site control purposes, the owner of the real estate ("Owner") out of which the Business operates ("Real Estate") has entered into a lease with [Ford Leasing] and [Ford Leasing] has entered

9

into a sublease with the Seller.

*      *      *

(i) [Ford Leasing] and Purchase[r] shall have entered into a lease ("Lease") which contains terms mutually agreeable to [Ford Leasing] and Purchaser, but which requires a minimum base rent of $20,800 per month, and which terminates the Seller's sublease.[]

The Promissory Note provides, in relevant part:

**Promissory Note**

Principal Amount: $482,400      Date: November 19, 2014
FOR VALUE RECEIVED, the undersigned, Larry Stovesand Lincoln Mercury, Inc (hereinafter "Maker") promises to pay to the order of Riverside Lincoln-Mercury, Inc d/b/a Bob Williams Lincoln-Mercury, (hereinafter "Lender"), or its order, at such place or places as the holder hereof may, from time to time, designate in writing, the principal sum of Four Hundred Eighty-two Thousand Four Hundred ($482,400) Dollars in lawful money of the United States of America. Lender and its successors, assigns, personal representatives, heirs and legatees shall be considered the "Holder", as referred to in this Note.

Maker is party to an option to purchase, ("Option to Purchase") executed contemporaneously herewith wherein Maker was given the option to purchase certain real estate commonly known as 1811 Gallatin Road North, Madison, Tennessee 37115 ("Real Estate") which is owned by Lender's majority shareholder, Phyllis Williams.

*      *      *

If Maker, or its permitted assigns exercises and closes on the Option to Purchase, or if Ford Leasing Development Company, or its assigns purchase the real Estate . . . prior to or on November 30, 2007, then this Note shall be null and void and of

no force or affect [sic]. If however, the Real Estate is not purchased as aforesaid, then this Note shall be paid as set forth below:

(A) If there is not a closing on the [real estate] on or before November 30, 2007, Maker shall pay lender thirty-six (36) consecutive monthly payments of $4,200 each, commencing on December 1, 2007 and continuing on the first day of each month thereafter until all thirty-six (36) payments are paid in full or there is a closing on the Sale of Real Estate, whichever occurs first.

(B) If there is not a closing on the [real estate] on or before November 30, 2010, Maker shall pay Lender thirty-six (36) consecutive monthly payments of $9,200 each, commencing on December 1, 2010 and continuing on the first day of each month thereafter, until all thirty-six (36) payments are paid in full or there is a closing on the Sale of Real Estate, whichever occurs first.

(C) Upon the closing on the Sale of Real Estate, this Note shall be deemed to be null and void as to all payments which are scheduled to come due after the date of said closing.

The Promissory Note also states that it is secured by an irrevocable guaranty of Paducah Ford, a limited guaranty of Larry Stovesand, and a security agreement.

The Original Asset Purchase Agreement also includes the following provision:

**Entire Agreement.** This Agreement, together with all exhibits and schedules hereto, constitutes the entire agreement among the parties hereto pertaining to the subject matter hereof and supersedes all prior agreements, understandings, negotiations, and discussions, whether oral or written, of the parties. Except as otherwise provided herein, no supplement to, or modification of[] this Agreement shall be binding unless executed in writing

11

by each of the parties hereto.[7]

The document titled Security Agreement contains a similar provision.

According to the plain language of the Promissory Note, Stovesand Lincoln "promises to pay to the order of Riverside Lincoln-Mercury . . . or its order . . . the principal sum of Four Hundred Eighty-two Thousand Four Hundred ($482,400) Dollars." Despite this plain language, Appellants make several arguments to support their claim that the Promissory Note actually constitutes an agreement for future rent. Appellants claim they were relieved of their obligation to pay when Stovesand Lincoln closed its doors in July 2011 because the payments were actually for rent. However, Appellants do not point to any specific language in which this obligation is characterized as rent or a lease. We are required to base our decision on the plain language of the contract, and the plain language indicates that this is a Promissory Note securing payment for the purchase of additional goodwill. It is not the charge of this Court to determine the parties' reason for making the subject of the contract "goodwill" rather than "future rents," nor is it our charge to determine why the Promissory Note was omitted from the Bill of Sale. Indeed, the rule of construction *expressio unius est exclusio alterius*—that is, the expression of one thing implies the exclusion of others—supports this conclusion. Because the parties explicitly expressed the $482,400.00 amount as "additional goodwill," we decline to hold that this amount actually represents "rent," a word never mentioned in the Promissory Note. ***Pitt v. Tyree Org., Ltd.*** 90 S.W.3d 244, 252 (Tenn. Ct. App. 2002) (holding that where a contract is unambiguous, courts "must interpret it as written rather than according to the unexpressed intentions of one of the parties").

Further, the form of the agreement—a promissory note—does not support Appellants' contention that this agreement is actually a lease. A promissory note is defined as "an unconditional promise in writing to pay a person a sum of money." Bryan A. Garner, *A Dictionary of Modern Legal Usage* 702 (2d ed. 1987). On the other hand, a lease is defined as "the written instrument in which such a conveyance [of real property], together with the covenants, is incorporated." ***Id.*** The record is devoid of any plain language indicating the payments due pursuant to the Promissory Note represented compensation for use of the real property. Furthermore, common sense dictates that a promissory note and a lease of real property are two distinct contracts, one of which secures payment for value, and one of which governs a relationship between the owner of real property and its inhabitant. Under

---

[7]Although the parties subsequently amended the Original Asset Purchase Agreement, the subsequent amendments indicate that "[e]xcept as modified by this Amendment, the [Original Asset Purchase Agreement] shall remain in full force and affect [sic]." Thus, this provision remains part of the agreement.

Tennessee law, we must interpret the contract as written, and it is undisputed that the parties used the term "additional goodwill" to refer to the $482,400.00 payment obligation. *See **Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.***, 521 S.W.2d 578, 580 (Tenn. 1975). Moreover, the contract does not include any terms typically found in a lease agreement, such as provisions relating to the term of the lease or the use of the property. On the contrary, the contract includes several terms indicative of a purchase, such as "for value received," "principal balance," and "purchaser." While the Appellants here could have entered a lease reflective of their alleged intent to provide payment for future rents, they chose to frame the transaction as a purchase. Tennessee's public policy strongly favors contracting parties ability to strike their own bargains. Steven W. Feldman, *Tennessee Practice: Contract Law & Practice* § 1:6 at 17 (2006). On multiple occasions the contract refers to this obligation as a purchase or sale; the terms "rent" or "lease" are not contained in the contract. Furthermore, the very nature of a promissory note contemplates a sale rather than a rental agreement for real property. While a purchase option may be an atypical provision in a promissory note securing payment on a purchase of goodwill, we cannot conclude that the inclusion of this provision creates an ambiguity, when the contract, by its very terms, indicates that the promissory note secures payment on a purchase.

Despite the plain language contained in the contract indicating that the promissory note secures indebtedness on a purchase, the Appellants argue that other aspects of the contract, as a whole, indicate that the obligation is actually one to pay rent. As previously discussed, in interpreting the Promissory Note, we must consider the entire agreement:

> In construing a contract, the entire contract should be considered in determining the meaning of any or all of its parts. It is the universal rule that a contract must be viewed from beginning to end and all its terms must pass in review, for one clause may modify, limit or illuminate another.

***Cocke County Bd. of Highway Commis v. Newport Utils. Bd.***, 690 S.W.2d 231, 237 (Tenn. 1985) (internal citations omitted). As explained by the Tennessee Supreme Court:

> Other writings, or matters contained therein, which are referred to in a written contract may be regarded as incorporated by reference as a part of the contract and therefore, may be properly considered in the construction of the contract. Where a written contract refers to another instrument and makes the terms and conditions of such other instrument a part of it, the two will be construed together as the agreement of the parties.

13

Construing contemporaneous instruments together means simply that if there are any provisions in one instrument limiting, explaining, or otherwise affecting the provisions of another, they will be given effect as between the parties themselves [a]nd all persons charged with notice so that the intent of the parties may be carried out and the whole agreement actually made may be effectuated.

*McCall v. Towne Square, Inc.*, 503 S.W.2d 180, 183 (Tenn. 1973) (quoting 17 Am.Jur.2d, *Contracts* §§ 263–65); *see also* 11 *Williston on Contracts* § 30:25 (4th ed.) ("Generally, all writings which are part of the same transaction are interpreted together.").

Appellants first argue that the Promissory Note cannot actually be a promissory note securing payment on a purchase because Stovesand Lincoln would be discharged from its obligation under the Promissory Note if Stovesand Lincoln exercised its option to purchase. Appellants attempt to reason that it is illogical to permit Stovesand Lincoln to cease payments for goodwill if it purchases the real estate; thus, Appellants argue that the only reasonable interpretation of the contract is that it memorializes an obligation to pay rent. While we agree that the Promissory Note's provision that allows its payments to cease upon purchase of the real estate could be read as an indication that the underlying purpose of this contract may have involved some obligation relative to the use of the property, this provision does not alter the fact that the parties clearly and unambiguously chose to characterize this obligation as a purchase. In *Brooks v. Networks of Chattanooga*, 946 S.W.2d 321, 324 (Tenn. Ct. App. Dec. 23, 1996), we upheld a lease provision mandating double rents for any holdover period, opining that "an individual is free to bind himself by a contract whose terms may not seem reasonable or decent to an outside observer." Similarly, in *Lambert v. Lambert,* we held that although "the trial court felt that such an interpretation would be at odds with 'the standard practice' in [] divorces and 'would fly in the face of equity[,]' . . . courts are not at liberty to make a new contract for the parties." No. M2013-01885-R3-CV, 2014 WL 3563630, at *8, n.3 (Tenn. Ct. App. July 18, 2014). The *Lambert* Court ultimately rejected the husband's argument that the wife's share of certain property should be limited to the duration of the parties' first of two marriages, when the Marital Dissolution Agreement entitled wife to "all of Husband's military retirement pay, regardless of the duration of the parties' marriage." *Id.* at *8. Like the courts in *Brooks* and *Lambert*, we decline to address whether a contractual provision—here, the option to purchase—is atypical of the type of contract expressly utilized by the parties. Indeed, this Court will not opine on the "wisdom and folly" of the contracting parties' intentions or business practices. *Chapman Drug Co. v. Chapman*, 341 S.W.2d 392, 298 (Tenn. 1960).

Moreover, we find no merit in Appellants' argument that the omission of the

additional goodwill from the Bill of Sale indicates that the Promissory Note governed the payment of rent.  The Second Amendment and the Promissory Note, when read together, undeniably provide that Stovesand Lincoln is to pay $482,400.00 for the additional goodwill. Assuming *arguendo* that the omission of the additional goodwill from the Bill of Sale creates an ambiguity, such an ambiguity would be a patent ambiguity.  *See **Mitchell v. Chance***, 149 S.W.3d 40, 44 (Tenn. Ct. App. 2004) (quoting ***Weatherhead v. Sewell***, 28 Tenn. (9 Hum.) 272, 295 (1848) (defining "patent ambiguity" as one "produced by the uncertainty [or] deficiency of the language of the instrument").  Parol evidence is not admissible to remove a patent ambiguity but is admissible to remove a latent ambiguity. ***White v. Kaminsky***, 264 S.W.2d 813 (Tenn. 1954).  Appellants, in their brief, state that the additional goodwill "is not listed *anywhere* on the Bill of Sale."  (Emphasis in original.)  A latent ambiguity, which can be removed by extrinsic evidence, "is *one which is not discoverable from a perusal of the [contract]* but which appears upon consideration of the extrinsic circumstances."  ***Mitchell v. Chance***, 149 S.W.3d 40, 44–45 (Tenn. Ct. App. 2004) (emphasis added).  The Bill of Sale completely excludes the additional goodwill, and this exclusion is apparent on the face of the document (i.e. It is "discoverable from a perusal" of the document). Further, the document as a whole, rather than extrinsic circumstances, reveals the existence of the Promissory Note.  As such, it is not a latent ambiguity.  Again, assuming *arguendo* that the omission of the additional goodwill from the Bill of Sale creates an ambiguity, it is a patent one because it would render the document facially "uncertain" or "deficient."  At the time Appellee handed Appellants the Bill of Sale at closing, they would have been able to see (and potentially resolve) any perceived ambiguities in the document. Thus, parol evidence, in this case, would be inadmissible to remove the patent ambiguity, and the trial court properly considered only the four corners of the agreement.  *See **id.***  "When patent ambiguities are found by a court that adheres to the traditional distinctions, they will be resolved by the rules of interpretation or not at all.  Since parol evidence is not admissible in those jurisdictions to explain patent ambiguities, no other result is possible." 11 *Williston on Contracts* § 33:43 (4th ed.) (footnotes omitted).

Finally,  Appellants note that the amount of rent owed to Appellee coincided with the amount due under the Promissory Note.  According to Appellants, the parties' intent that the Promissory Note represent rent is clear when "comparing the future sublease rent amounts in the Original Asset Agreement to the future sublease rent amounts in the Second [Amendment] and [Promissory Note]."  According to Appellants, the payments under the Promissory Note ultimately amount to $482,400.00, which purports to be "additional goodwill" in the Second Amendment. However, as Appellants argue, this amount is identical to the amount of rent as stated in the Second Amendment.[8]  According to Appellants, this

---

[8]This explanation is elicited from Appellants' brief:

situation was more than a coincidence; Appellants argue this arrangement was purposeful and calculated, and that it is evidence that the contract was either suggestive of rent or, at a minimum, ambiguous. Under Tennessee law, the fact that Appellants' subjective interpretation of the contract differs from Appellee's subjective interpretation is not sufficient to render the contract ambiguous. *See Cookeville Gynecology & Obstetrics, P.C. v. Se. Data Sys., Inc.*, 884 S.W.2d 458, 462 (Tenn. Ct. App. 1994) (citing *Oman Constr. Co. v. Tenn. Valley Auth.*, 486 F.Supp. 375, 382 (M.D. Tenn. 1979)) (holding that plain language in unambiguous contract entitled seller to cure any deficiency before buyer was entitled to request a refund, even when buyer interpreted the contract to entitle her to a refund); *Fisher v. Revell*, 343 S.W.3d 776, 781 (Tenn. Ct. App. 2009) (holding that plaintiff's interpretation of uninsured motorist insurance policy was not reasonable and, therefore, could not render the contract ambiguous). As written, the contract does not support Appellants' interpretation, and it is exactly the type of strained interpretation that Tennessee courts avoid. *See Farmers-Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975). Moreover, contracting parties are free to change their minds and reallocate obligations. We note that the parties' agreement also included a clause that stated the parties' writings "supersede[] all prior agreements, understandings, negotiations, and discussions, where oral or written, of the parties." Thus, any "understandings" of the parties that the dollar amounts represented something other than additional goodwill are irrelevant to the extent they are not memorialized in the unambiguous writing. In determining the legal meaning of this contract, we do not attempt to gauge the parties' subjective intention, but rather their intentions as reduced to writing. *Union Planters Nat'l Bank v. Amer. Home Assur. Co.*, 865 S.W.2d 907, 912 (Tenn. Ct. App. 1993). Simply stated, if the parties in this case wanted the $482,400.00 to represent rent and not additional goodwill, then the plain language of the contract should have reflected this intention.

We note that Appellants also argue that parol evidence shows that the contract at issue concerned an obligation to pay rent, rather than a sales agreement. However, as previously discussed, parol evidence may not be used "to alter, vary, or qualify the plain meaning of an unambiguous written contract." *Staubach Retail Servs.-Se., LLC v. H.G. Hill Realty Co.*,

---

| **ORIG. ASSET AGREEMENT** | | **SECOND AMENDED AGR.** | | **MO. DIFFERENCE** |
|---|---|---|---|---|
| Years 1-3 | $20,800.00 | All years | $20,800.00 | $0.00 |
| Years 4-7 | $25,000.00 | All years | $20,800.00 | $4,200.00 |
| Years 7-9 | $30,000.00 | All years | $20,800.00 | $9,200.00 |

**Payments Under [Promissory Note] (same payment plan as Second [Amendment]:**

| | |
|---|---|
| November 30, 2004-November 29, 2007 (yrs. 1-3) | $0 |
| November 30, 200[7]-November 29, 2010 (yrs. 4-7) | $4,200 x 36 months = $151,200.00 |
| November 30, 2010-November 29, 2013 (yrs. 7-9) | $9,200 x 36 months = $331,200.00 |
| | **TOTAL:**     **$482,400.00** |

16

160 S.W.3d 521, 525 (Tenn. 2005). Because we have determined that the contract is unambiguous (or, at best, patently ambiguous), parol evidence is not admissible to contradict its plain meaning.

In sum, we hold that the contract at issue is not ambiguous. In doing so, we have determined, from the plain language chosen by the parties, the parties' intent to create an agreement for the sale of additional goodwill. A contract need not be a "model of clarity" to be unambiguous. ***Johnson v. Johnson***, 37 S.W.3d 892, 896 (Tenn. 2001). It is not the duty of this court to relieve parties from contractual obligations for their imprudent business practices or because the obligations later prove to be burdensome or unwise. *See, e.g.*, ***Marcum v. Ayers***, 398 S.W.3d 624 (Tenn. Ct. App. 2012) (affirming dismissal of plaintiff-homeowners' claims based upon an unambiguous settlement agreement releasing all claims of damage to home); ***Cameron Gen. Contractors, Inc. v. Kingston Pike, LLC***, 370 S.W.3d 341 (Tenn. Ct. App. 2011) (opining that although "this result may be harsh," the court reversed the trial court's expansion of contractual remedies available to plaintiff).

## Conclusion

The judgment of the Davidson County Chancery Court is affirmed, and this case is remanded to the trial court for all further proceedings as are necessary and are consistent with the Opinion. Costs of this appeal are taxed to Appellants Larry Stovesand Lincoln Mercury, Inc. and Paducah Ford, Inc., and their surety.

_____
J. STEVEN STAFFORD, JUDGE